THOMAS SMITH, EXECUTOR OF JOHN SMITH, DECEASED, v. ALEXANDER M. SMITH AND OTHERS.

1. The provisions of the act entitled "an act supplementary to the several acts relating to the recording of deeds, mortgages," etc., passed March 25, 1851, requiring mortgages to be recorded in the set of record books denominated "record of mortgages," is merely directory to the recorder.
2. A mortgage deed, duly executed and delivered to the recorder for record, since the passage of said act, and by him recorded in a record book denominated the "record of deeds," and indexed in both the volume index and in the general index, with the letters "mtg" annexed, and returned to the mortgagee, is operative as a mortgage against a subsequent purchaser for value without actual knowledge of said mortgage.

RESERVED in the district court of Lorain county.

In August, 1859, the plaintiff filed his petition in the court of common pleas of Lorain county, setting forth that the defendant, Alexander M. Smith, on the 15th day of November, 1853, made his promissory note, and delivered the same to John Smith, and thereby promised to pay to him, or bearer, four hundred and sixty-five dollars, on or before the 1st day of April, 1859, and that he has failed to pay the same, or any part thereof, and asks judgment for said sum, together with interest from said 1st day of April.

And for a second cause of action the petition states that the said Alexander M. Smith, on the 15th day of November, 1853, made and delivered this other certain promissory note

to said John Smith, and thereby promised to pay to said John Smith, or bearer, the sum of five hundred dollars, on or before the 1st day of April, 1858, and that no part of the same has been paid, and asks judgment, with interest from the 1st day of April, 1858.

And for a third cause of action, the plaintiff states that on the 20th day of April, 1855, in order to secure the payment of said promissory notes, said Alexander M. Smith executed his mortgage deed of a certain tract of some seventy-five acres of land, situate in said Lorain county, and particularly described in the petition, of which he was then seized in fee simple, and delivered said mortgage deed to said John Smith. " That the said deed was, on the same day, duly left for record with the recorder of said county of Lorain, and recorded. The plaintiff avers that the conditions of the mortgage have not been performed, and that the same has become absolute."

The plaintiff further states that the said Alexander M. Smith, afterward, on the 22d day of March, 1858, executed another mortgage upon said premises to one John Fox, to secure the payment to him of a certain promissory note therein described; that afterward, on the 8th day of July, 1858, the said Alexander M. Smith conveyed the said tract of land to Samuel Plumb and Ralph Plumb, in fee simple, and that said grantees are now in possession of the same, and that they hold the same subject to said mortgages, of which they had due notice.

The plaintiff avers the nonpayment of said notes, and that said mortgage to said John Smith is in full force against said land; states the death of said John Smith, testate, and that the plaintiff has been duly appointed and qualified to act as his executor, etc., and prays judgment against said Alexander M. Smith for the amount due the plaintiff on said promissory notes; that said Fox and Plumbs be made defendants and duly notified; and that, in default of payment of the amount due the plaintiff, the premises be decreed to be sold and the proceeds applied in payment thereof, etc.

The defendants, Samuel Plumb and Ralph Plumb, answer, admitting their purchase and possession of the lands; but

deny any knowledge, at the time, of said mortgage deed to the said John Smith; and they deny any record of such mortgage which gives it effect prior to the deed of conveyance so made to them; they also deny the validity of the promissory notes and mortgage, so made by said Alexander M. Smith to said John Smith, in his lifetime, or that the same were made for any consideration, or for any other purpose than to cover up the property of the said Alexander M., and defraud his creditors, etc.

The plaintiff replied.

The case was appealed to the district court, and was therein reserved to this court, on the following agreed statement of facts:

" It is agreed that the defendant, Alexander M. Smith, executed and delivered to the plaintiff, John Smith, the notes and mortgage described in the petition, and that the said John Smith, on or about the 11th day of July, 1855, deposited the said mortgage in the office of the recorder of Lorain county, for record; that the recorder of said county, on the 11th day of July, 1855, transcribed the said mortgage on the 346th page of volume 7 of the record of *deeds* of said county, and immediately returned the same to said John Smith, who died in October, 1858. And that no record of said mortgage was made upon the record of mortgages for said county. That the recorder indexed the said record, upon the general index, in the words and figures following:

> " ' GRANTOR.'　　　　　　　" ' GRANTEE.'
> " ' Smith, Alex.　　　　" ' John Smith, 594.'
> " ' Same Rec'd on Deeds No. 7.　　Same 346.'
>
> ALSO,
>
> " ' GRANTEE.'　　　　　　" ' GRANTOR.'.
> " ' John Smith.　　　　" ' Alex. Smith.'
> 　　　" ' No. 7, Deeds, 346.'

" And that the reference to page 594, is to the book for the record of mortgages, and is a correct index to another mortgage from Alex. M. Smith to John Smith, and not to the

mortgage in controversy. The recorder also properly indexed the same in the index of deeds, adding the word ' mtg.'

"That the defendants, Ralph Plumb and Samuel Plumb, purchased the land described in said petition of the said Alex Smith, and paid a full and valuable consideration therefor, and the said Alex. Smith, being in possession of the premises, executed to the said Plumbs a deed of the same, on the 8th day of July, A. D. 1858, free from all incumbrances, except as therein stated [the Fox mortgage], and that there is no proof of any notice to them, other than the statement of facts herein contained. That the said Ralph and Samuel Plumb executed the instrument of writing hereto attached to said Alexander Smith, and that they applied the proceeds referred to in the paper hereto attached, to the other claims mentioned in said paper, other than the claims of said mortgage notes.

"That the mortgage and the deed hereto attached, are the same executed to the parties by the said Alexander Smith."

The writing attached is a receipt and undertaking given by the Plumbs to Alexander M. Smith, at a date (Sept. 30, 1858) subsequent to the execution of the deed to them, for certain contracts and effects estimated at four hundred and eighty dollars, and their undertaking to apply the same " as collateral security for the payment and discharge of a lien on the farm deeded by the said Smith to the said Plumbs, which lien is a mortgage given by the said Smith to John Smith for security for the payment of two notes of nine hundred and sixty-five dollars, and also for said Smith's liability to Isaac Penfield, A. H. Clark, B. B. Baker & Co., and the said Plumbs," etc.

The deed referred to, from Alexander M. Smith to the Plumbs, is in the usual form, with a special saving of the mortgage to Fox from the covenant against incumbrances.

The mortgage referred to is in the usual form, and has indorsed thereon, "Rec'd for record July 11, 1855, and recorded 11th, in Book 7 of Deeds, page 346." "M. S. Rockwell, Recorder of Lorain county."

*Bliss & Osborne,* for plaintiff.

*Burke & Sheldon,* for defendants.

SUTLIFF, C.J.—There is nothing in the agreed statement of facts, or in the proof before us, to impair the validity of the notes and mortgage relied upon by the plaintiff, at the time of their execution to the testator, John Smith; nor is there anything to invalidate the claim of the defendants, Samuel Plumb and Ralph Plumb, to the character of *bona fide* purchasers and grantees of the land from Alexander M. Smith, without any actual notice of the prior mortgage to John Smith. There is, therefore, only one question presented to our consideration upon which the merits of the case is made to depend, viz : Was the delivery of the mortgage by John Smith to the recorder, and his recording it in the book of deeds, and so indexing the same, and indorsing and returning the deed to the mortgagee, sufficient to make the mortgage operative upon the premises, as against the grantees, Samuel Plumb and Ralph Plumb ?

Previous to the act of February 22, 1831, the law regulating the execution and recording of mortgages and deeds in this state was the same.

The territorial act of June 18, 1795, the first statute in this state relating to deeds and mortgages, required the same to be recorded within twelve months after execution, and provided that, in default of such recording, the same should be adjudged fraudulent and void " as against any subsequent purchaser or mortgagee, for valuable consideration ; unless such deed or conveyance be recorded, as aforesaid, before the proving and recording of the deed of conveyance under which such subsequent purchaser or mortgagee shall claim." Territorial Laws, ch. 53, sec. 8.

This provision was amended by the statute of January 20, 1802, so as to require deeds and conveyances executed without the territory to be recorded within one year from their execution, and deeds and conveyances executed within the territory to be recorded within six months from the exe

cution, and providing that in default of such recording, the same should be deemed fraudulent against any subsequent *bona fide* purchaser or purchasers, without knowledge of the existence of such former deed or conveyance. Ter. Laws, ch. 161, sec. 3.

And this territorial act was but slightly altered by the state law of January 12, 1805, which revised and superseded it. The act of 1805, fixes the same limit for recording conveyances, and only differs in the phraseology so as to make its provisions more clearly embrace mortgages. This act provides that " if any deed or conveyance of lands, tenements or hereditaments, made and executed, whereby the same shall be affected in law, or in any manner incumbered, shall not be acknowledged or proved, and recorded within the respective terms allowed by this act, the same shall be deemed fraudulent against any subsequent *bona fide* purchaser or purchasers without the knowledge of the existence of such former deed or conveyance."

The revisory act, upon the same subject, passed January 30, 1818, 1042, sec. 4 and 5, required " all deeds, mortgages and other instruments of writing," executed within the state, for the conveyance or incumbrance of lands within the state, to be " recorded within six months from the date of the same, within the county," etc.—providing that if the same should not be so recorded within the time limited, the same should be considered " fraudulent against any subsequent *bona fide* purchaser or purchasers without knowledge of such former conveyance ;" provided such deed or mortgage might be recorded at any time after the time so limited, and take effect from the time of recording—and that deeds executed without the state should take effect from the time of their being so recorded.

The same provisions were re-enacted in the revisory act upon the same subject, February 24, 1820 (Chase St. 1140, secs. 4 and 5), and the same remained in force until repealed and superseded by the act of February 22, 1831, entitled

" an act to provide for the proof, acknowledgment and re
cording of deeds and other instruments of writing."

While this act leaves the law unchanged, as to other deeds
of conveyance, it is provided by section 7, " that all mort-
gages executed agreeably to the provisions of this act shall
be recorded in the office of the recorder of the county in
which such mortgaged premises are situated, and shall take
effect from the time when the same are recorded ; and if two
or more mortgages are presented for record on the same day
they shall take effect from the order of presentation for rec-
ord ; the first presented shall be the first recorded, and the
first recorded shall have preference."     .

The mortgage, regarded as a contract beween the parties,
would be, at common law, of full force and effect between the
parties, as soon as executed. And so, too, under the preceding
statutes of this state, the mortgage, as soon as executed, was of
full force between the parties ; and it was only by respect to
public policy, that the legislature saw fit to enact that, as to
third persons who purchased the premises in good faith without
any knowledge of the mortgage, after the expiration of six
months, and a neglect of the mortgagee to have the same re-
corded, the mortgage should not be set up by such delinquent
mortgagee to the prejudice of the *bona fide* subsequent purchaser.

Now, inasmuch as this section 7, of the act of 1831, ope-
rates to change the common law rule and the former statute
rule perjudicially to rights otherwise belonging to the mort-
gagee, the rule of interpreting statutes, applicable in such
cases, requires that the statute should have a restricted in-
terpretation ; that it should not be extended beyond the clear
and obvious meaning of its words.

The recording of the mortgage, as provided for by this
statute, clearly appears to have been made agreeably to the
language of section 7, and acccording to the provision of
this statute, the mortgage, from and after July 11, 1855, the
day it was recorded, was entitled to full force and effect as a
valid mortgage. And if this act of 1831, were the only stat-
utory provision bearing upon the question, there could be no
reasonable doubt as to the sufficiency of the recording. But

while the act of 1831, it is conceded, has remained since its enactment unrepealed and in force, its provisions have been qualified by subsequent legislation upon the same subject. There are two other acts of the legislature, enacted subsequently to the act of 1831, in relation to the record of mortgages, to which our attention has been particularly called by counsel.

The act of March 16, 1838, entitled " an act declaratory of the laws upon the subject of mortgages," after reciting, in the preamble, that doubts had arisen under the act of 1831, " whether deeds of mortgage take effect from the time the same are delivered to the recorder of the proper county for record, or from the time the same are actually copied into the book of records," for the purpose of removing such doubts, by section 1, it is " declared and enacted that mortgage deeds do and shall take effect and have preference from the time the same are delivered to the recorder of the proper county, to be by him entered on record, anything in the before recited act to the contrary notwithstanding." Curwen's St. 429.

Again, on the 25th of March, 1851, in the act entitled " an act supplementary to the several acts in relation to the recording deeds, mortgages and other instruments of writing," it is provided as follows :

" SEC. 1. That all deeds, powers of attorney, and other instruments of writing whatever, other than mortgages, deeds of trust in the nature of mortgages, and powers of attorney for the execution of mortgages, or for the execution of deeds of trust in the nature of mortgages, shall be recorded in the set of record books denominated ' Record of Deeds ;' and all mortgages, deeds of trust in the nature of mortgages, and powers of attorney for the execution of mortgages, or such deeds of trust as aforesaid, shall be recorded in the set of record books denominated ' Record of Mortgages,' anything in any act to the contrary notwithstanding." Curwen's St. 1663.

It is insisted, on the part of the defendants, that this provision of the statute of 1851, is not only to be regarded as

supplementary to act of 1831, but is also to be regarded as supplementary to section 7 of that act, and requires that the mortgage deed so recorded on the 11th of July, 1855, should have been recorded in the "Record of Mortgages," in order to bring it within the purview of the statute requiring it to be recorded to give it validity as a mortgage.

On behalf the plaintiff, it is insisted that, by the provisions of the act of 1838, the delivery of the deed of mortgage by the mortgagee to the recorder, for record, gave it validity as a mortgage; and that the same, by force of the statute, took effect and had preference from the time of such delivery to the recorder; and that the subsequent return of the mortgage by the recorder to the mortgagee, could not destroy the efficacy of the mortgage so made, by the statute, to depend upon its delivery to the recorder.

This construction of the declaratory act of 1838, seems, to a majority of the members of this court, inadmissible. The object of this declaratory act, appears to us to have been merely to give a fair and reasonable construction to the acts of 1831, relating to the recording of mortgages. And if section 7 of that act " to provide for the recording of deeds and other instruments " had been fairly construed, with the act prescribing the duties of recorders, passed at the same session of the legislature, the declaratory act would have been, probably, unnecessary. The act of February 25, 1831, providing for the election and prescribing the duties of county recorders, required the recorder to record all deeds, mortgages, etc., required by law to be recorded, which should be presented to him for that purpose, in regular succession, according to the priority of presentation; and, if a mortgage, it is provided that " the precise time of the day on which the same was presented shall also be recorded;" and it is provided by section 5, " that upon the presentation of any deed or other instrument of writing for record, the recorder shall indorse thereon the date of its presentation," etc. Chase's St. 1842.

Now, by the well recognized rule that all acts *in pari materia*, relating to, or parts of the same subject matter,

are to be taken together as if one law, it would seem that there was due to section 7 of the act relating to the recording of deeds, precisely the same meaning before as after the passage of the declaratory act of 1838. For, by taking into consideration the two acts of 1831, in relation to the recording of mortgages, we find the provisions upon the subject, taken together, to be as follows: The recorder is required, as to every deed and mortgage, to first "indorse thereon," when delivered to him, the time when the same is presented to him for record; and then to copy such deed or mortgage, and the indorsement of the time when received, into a record book, in the precise order in which received. The official act of the recorder, therefore, commences with receiving the mortgage, and indorsing thereon the date of its presentation; and his official act is only consummated upon fully completing the record, indexing the same, and indorsing upon the mortgage the time when, and the place where, recorded, as required by the statute. While, therefore, the provision of section 7 is, that mortgages shall be recorded, "and shall take effect from the time when the same are recorded," the provisions of the two acts render it reasonably certain, that the delivery of the mortgage is to be regarded such an *inchoate* compliance, as to entitle the mortgagee, upon full compliance with the requisition of the statute, by a recording of the mortgage, to the effect of the same, by relation, as a perfect mortgage, at the time of its being so delivered to the recorder for record.

It is not claimed, that independent of the declaratory act, a bare delivery of the mortgage for record would give it validity, so that, if withdrawn by the mortgagee before recorded, the mortgage would be vailid without being recorded. And it seems to me that it may well be doubted whether the declaratory act of 1838 has, in any respect, changed the law, so as to dispense with recording, in order to give effect to the mortgage. But we deem it unnecessary to decide this question in the present case.

It remains, therefore, only to consider the character and effect of the supplementary act of 1851. That act, as we

have seen, is entitled "an act supplementary to the several acts in relation to the recording of deeds, mortgages and other instruments of writing;" and its provisions, requiring absolute deeds of conveyance to be recorded in one set of books, and conditional and trust deeds in another, as well as its title, show the act to have been not only not merely supplemental to section 7, as is claimed, but not even more appropriately supplemental to the whole act of February 22, 1831, than the act of February 25, 1831. Indeed, the act of February 25, 1831, is the act which particularly prescribes the duty of the recorder, as to the order and manner and place of recording deeds and mortgages. It requires him to record the deeds and mortgages "in a fair and legible handwriting, in books to be by him provided for that purpose." And this supplemental act, in addition to those requirements, makes it the duty of the recorder, after so providing the books, to divide them into two sets, one to be appropriated for the recording of deeds, and the other for the recording of mortgages, and to record each kind of deeds in the appropriate set of books, as well as "in a fair and legible hand," and "in regular succession." There is, moreover, nothing in the provisions of the supplemental act prescribing any act for the mortgagee, or imposing any additional duty upon him. And the existing laws imposed upon the recorder the duty of recording the mortgages in the books to be by himself furnished, at the time of the passage of the supplemental act, so directing one set of the books to be exclusively appropriated for that purpose. Nor does any provision of either act require, or even authorize, the mortgagee to interfere with the recorder in the discharge of his duties.

Again, the object of the statutes requiring the mortgage to be recorded, evidently was to afford reasonable means of notice to third persons. All the statutes of this state upon the subject preceding the revisory act of 1831, contained in the same section, the same provision for the recording of deeds and mortgages; and made them both alike, on neglect of being recorded within the time limited, void only " against subsequent *bona fide* purchasers, or mortgagees," *without*

*knowledge " of such former conveyance."* The same lan-guage is used in the revisory act of 1831, at the close of section 8, limiting the time of recording deeds and other in-struments of writing. But in this act of 1831, two sections are used instead of one, as in the preceding act; and the provision limiting the effect of failure to record, to persons *" without knowledge "* of the instrument, is omitted in section 7, treating of mortgages, and only added at the close of sec-tion 8, after limiting the time of recording all instruments to be recorded, as in the former acts where all were embraced in the same section. Notwithstanding this change of phrase-ology, it certainly would have been no violation of the rules of interpreting statutes, to have held unrecorded mortgages under the act of 1831, as void only against subsequent *bona fide* purchasers, without knowledge of such mortgage. But even under the more strict and long established construction given to section 7 of the act of 1831, it is still true of the acts of 1831, 1838 and 1851, that the object of each and all of them is to give notice to third persons.

In the present instance, however, it appears that agreeably to the requisitions of section 7 of the act of February 22, 1831, the mortgage was recorded; and the provision of that act is, that " the mortgage " shall take effect from the time the same is recorded. It was recorded in a book and indexed in an index of the records of the proper county, a book and an index into which, every one, referring to the records of the county, must necessarily look, as well as into the record of mortgages, in order to ascertain the character of the title to lands in that county. And especially is this so, since deeds absolute on their face and intended as mortgages by the parties, or so made as to be regarded as mortgages by the courts, are not unfrequently or improperly recorded in the record books denominated " record of deeds." Indeed, this supplemental act of 1851, affords no additional means of notice to third persons; it is, at most, only an act affording additional facilities for a more ready reference to the record of any particular deed or mortgage, than was had while

deeds and mortgages were recorded and indexed promiscuously, in the same volume.

All these considerations, and others which might be mentioned, as well as a proper regard to the rules of interpretation peculiarly applicable to the statutes under consideration, constrain us to regard the supplementary act of 1851, as merely *directory* to the recorder. The recording of the mortgage, therefore, by the language of the statute, and, we think, by its true spirit, gives to this recorded mortgage full effect and validity from and after the time of its delivery to the recorder for record.

The decree must be entered accordingly, for the plaintiff.

PECK, GHOLSON and BRINKERHOFF, JJ., concurred; SCOTT, J., dissented.