# CHARLESTON.

## WAGON CO. v. HUTTON.

Submitted February 9, 1903.   Decided April 11, 1903.

1.  CONTRACT—*Title*.
    It is not necessary that a contract reserving to the seller of chattels title until payment shall be acknowledged to be recorded under section 3, chapter 74 of the Code.   (p. 155).

2.  TITLE—*Recordation—Contract*.
    When a contract selling chattels and reserving title until payment is left with the clerk of the county court to be recorded, it is deemed that its record is complete, and the fact that it is recorded in the "Miscelaneous Record Book," will not invalidate its recordation.   p. 156).

3.  CONTRACT—*Sale—Record*.
    A contract of sale of wagons which reserves title to them until paid for is valid against purchasers from the vendee even without other notice than that given by its record.   (p. 157).

Appeal from Circuit Court, Randolph County.

Action by the Troy Wagon Company against Woodford Hutton.   Judgment for defendant, and plaintiff appeals.

*Reversed.*

E. D. TALBOTT, for appellant.

HARDING & HARDING, for appellee.

BRANNON, JUDGE:

The Troy Wagon Works Company sold C. W. Flesher 20 wagons.   The order for the wagons from Flesher contained the terms of the contract, among them the provisions: "The title to all goods shipped under this or any subsequent order is to remain in The Troy Wagon Works Company (unless at their option it shall be waived), and the goods are to be held at all times subject to their order, until paid for; and if sales are made before payment, the proceeds of all such sales whether cash, book accounts or notes, are to be held subject to the order of The Troy Wagon Works Company until all obligations arising under this contract are fully paid in money.   It is further

agreed that notes taken by The Troy Wagon Works Company
in settlement are not accepted as payment, but only as evidence
of liability." This paper was recorded in the office of the clerk
of the county court of Randolph county in the book commonly
called "the miscellaneous record." Flesher paid nothing on
the wagons, but at once on their arrival at Huttonsville sold
them to Woodford Hutton, who paid Flesher for them. Hutton
had no knowledge that Flesher owed for the wagons, but when
he bought the said contract had been admitted to record. Hut-
ton sold 17 of the wagons, and for the 3 still in his hands the
Wagon company brought detinue before a, justice which went
by appeal to the crcuit court of Randolph, and the cause was
tried and agreed facts by the court and a judgment for Hut-
ton was rendered and the Wagon company appeals.

It is contended that as the recorded contract was not acknowl-
edged as a writing to be recorded under chapter 73 of the Code,
its recordation is of no avail. This question is decided other-
wise in *Hatfield* v. *Haubert,* 51 W. Va. 190.

I understand counsel to contend that the registry of the sale
contract or order in the "miscellaneous record book" is not good,
but it ought to have gone in what we call a deed book or deed
of trust book. The Code says that where a sale is made of
goods reserving title until payment the reservation shall be
void as to creditors and purchasers without notice "unless a
notice of such reservation be recorded in the office of the clerk,"
&c. Code 1899, chapter 74, section 3. This contract is a clear
notice, and I think that when the seller lodged it in the clerk's
office for record he did all the law required of him, and he did
not have to see that it was recorded in any particular book.
In fact, the said section does not say in what book it shall be
recorded. It says the paper shall be "recorded" in the office.
When is it recorded? Under a statute saying that a paper
should "be lodged with the clerk to be recorded" and "be re-
corded according to the direction of this act," and it was held
that when lodged in the office it was to be considered as record-
ed, whether ever in fact recorded or not. *Beverly* v. *Ellis,* 1
Rand. 102. The court said that lodgement with the clerk
was all that the law demanded of the party, and that the words
"and recorded according to the directions of this act" imposed
no further duty, and that another construction would make the

title depend on the acts or omission of the clerk over whom the party had no control. *Horsley* v. *Garth*, 2 Grat. 472, holds that it is enough to leave the paper with the clerk. It seems to be the general current of authority that when the document is lodged in the proper office, the recordation exists, is done. 20 Am. & Eng. Ency. L. 565; note 37 Am. St. R. 469; *Davis* v. *Whitaker*, 41 *Id.* 793; *Beebe* v. *Morrell*, 15 *Id.* 288 and note 2 Devlin on Deeds, section 679. If leaving a paper with the clerk makes the registry complete, then the omission to record, or recording in the wrong book, works no harm to the party claiming under it. The statute does not say in what book a reservation of title to goods sold, or notice of it, shall be recorded, and when that is the case, "it may be recorded in any book in the office." *Farrabee* v. *McKerriham*, 51 Am. St. R. 734; Devlin on Deeds, section 630; *Smith* v. *Smith*, 13 Ohio St. 532. In fact, as section 10, chapter 73, provides a book in which unacknoledged writings may be recorded, we cannot say that recording such a paper in it is improper.

The controling question in this case, can the Wagon Company take the wagons from Hutton? That depends upon the contract, upon the intent of the parties manifested by it. There are two views presenting themselves as to the meaning of the paper. One is that the first clause in the quotation above operates only as between the Wagon Company and Flesher; that is, the title remains in the company until a wagon is sold, but no longer, and the purchaser from Flesher takes it free from the company's claim, that the sale passes title; that the clause giving the company option to waive the reservation is only while the reservation operates, that is, until sale. This construction says that the design was to prevent creditors of Flesher from subjecting the wagons to his debts, and prevent his giving any lien on them. This view says that the first clause would also prevent any sale by Flesher, if standing alone; but that it does not stand alone, but is qualified by the second clause, because that clause contemplates and allows a sale by Flesher, and manifests that the sale was, not that he might keep the wagons, not for that purpose, but on the contrary for the very purpose of sale, and that when sales should be made, the company could not look to the wagons, for the title has passed from it, but must look to the proceeds of such sale and to Flesh-

er. This view gives power of sale to Flesher absolutely. The other construction is that the clear, unequivocal reservation of title by the first clause can only be removed by a waiver by the company or payment; that it cannot be cut down by the second clause; that it operates between the company and purchasers from Flesher. That its only purpose is not at all to qualify the first clause, but is consistent with the reservation of title and waiver clause; that its only purpose is to add to the rights of the company the supplemental security of holding notes taken for the wagon to be the property of the company, and to say that if the company should accept notes of purchasers, that would not release Flesher until their payment. Under this construction Flesher could not sell a wagon unless the company waived its title as to it, or it was paid for, or perhaps by acceptance by the company of a purchaser's note. This view holds that thus an effect is given the second clause, as full effect as its language calls for, and it is consistent with the waiver clause. That waiver clause is potent, and the clause that the goods are at all times to be subject to the company's order until paid for. The court has adopted the second construction. By common law a purchaser can get no better title than the seller has, and we must not take this right away further than the seller has consented. This contract makes a conditional sale, strictly upon condition that the wagons be paid for, or the company waive its right, which right of waiver it has cautiously retained. It tells purchasers that it has right to waive or not waive. An owner of goods may sell on just such terms as he chooses, and he may impose such condition in the conditional sale as he chooses. *Vermont Marble Co.* v. *Brow,* 50 Am. St. R. 37. This contract follows up the property in the hands of purchasers. They must look to the record. It may be hard on them; but they must inquire. Ought Hutton not have wondered whether a large lot of new wagons had been paid for? Should he not have inquired? This contract is a clear reservation, and whether onerous or not, the company had right to make it. The first construction might practically nullify the careful reservation of the contract, while the one we give executes it.

The point is made that this is an Ohio contract because the wagons were sold and delivered on cars there. It was a valid contract there. It is a good reservation of title here. It is

claimed that being an Ohio contract, it ought to have been docketed in certain public offices there. Why so? The wagons were to come to West Virginia. A bond deed or reservation of title is no less such because not acknowledged or registered. *State* v. *Proudfoot,* 38 W. Va. 736. The question is, Is it an effective instrument in West Virginia.

Therefore, we reverse the judgment of the circuit court and render judgment for the plaintiff for the recovery of the wagons.

(Costs go to plaintiff in three courts.)

*Reversed.*