WOODALL v. CLARK et al. (two cases).

MILLS v. HUNTINGTON DEVELOPMENT & GAS CO.

(Circuit Court of Appeals, Fourth Circuit. October 16, 1918.)

Nos. 1643–1645.

1. REMOVAL OF CAUSES ⊕⇒107(5)—REMAND—EFFECT OF PETITION.
    Where the petition for removal of suits to cancel disclaimers to land alleged that the actual value of the property, exclusive of costs. etc., was in excess of $3,000, and such averments were not challenged, complainants' petition to remand must be denied; the petition for removal furnishing the basis of jurisdiction.

2. QUIETING TITLE ⊕⇒29—REMOVAL OF CLOUD FROM TITLE—LACHES.
    Where complainants were at all times in possession of the land, their delay in beginning suit to set aside disclaimers to the land does not constitute laches, which will bar relief.

3. EQUITY ⊕⇒363—MOTION TO DISMISS—EFFECT.
    A motion to dismiss a bill is in the nature of a demurrer, and for the purpose of the motion the allegations of the bill must be taken as true.

4. QUIETING TITLE ⊕⇒35(2)—BILL TO REMOVE CLOUD—SUFFICIENCY OF ALLEGATION.
    Allegations, in a bill to set aside as clouds on their title disclaimers, as to minerals, held to sufficiently aver complainant's title to the minerals mentioned.

5. MINES AND MINERALS ⊕⇒55(2)—DISCLAIMERS—CONSTRUCTION.
    In view of Code W. Va. 1913, c. 72, § 3 (sec. 3780), disclaimers of minerals in lands in West Virginia land held quitclaim deeds.

6. VENDOR AND PURCHASER ⊕⇒231(9)—BONA FIDE PURCHASERS—RECORD—DIRECTION.
    Where the predecessors of the title of defendants, who claimed under disclaimers to the minerals in land, directed that such disclaimers be recorded in the release docket, such recordation is binding on them.

7. VENDOR AND PURCHASER ⊕⇒231(9)—BONA FIDE PURCHASER—CONSTRUCTIVE NOTICE.
    Where disclaimers to the minerals in land were at the instance of those asserting title thereunder, recorded in the release docket, held that, under Code W. Va. 1913, c. 73, §§ 2, 7 (secs. 3805, 3810) and chapter 76, § 5 (sec. 3862), such disclaimers were not constructive notice to bona fide purchasers from the original owner, and the purchasers took as against those asserting title under the disclaimers.

Appeals from the District Court of the United States for the Southern District of West Virginia, at Huntington; Benjamin F. Keller, Judge.

Suits by T. J. Woodall and by Alonzo Woodall against Herbert L. Clark and another, trustees of the Lincoln County Land Association, a voluntary unincorporated association, and others, and by Oad Mills against the Huntington Development & Gas Company, a corporation, begun in the state court, and removed to the federal court. From decrees dismissing the suits, complainants appeal. Reversed and remanded, with instructions.

D. E. Wilkinson, of Hamlin, W. Va., for appellants.

Cary N. Davis and W. C. W. Renshaw, both of Huntington, W. Va. (Henry A. McCarthy, of Philadelphia, Pa., and Meek & Renshaw and Campbell, Brown & Davis, all of Huntington, W. Va., on the brief), for appellees.

Before PRITCHARD and WOODS, Circuit Judges, and CONNOR, District Judge.

PRITCHARD, Circuit Judge. In disposing of the three above-stated causes, the learned judge who heard the same, in referring to the nature of the suits, said:

"The above suits were instituted, in equity, in the circuit court of Lincoln county, W. Va., and later duly removed to this court. The matter is now before me upon motion to dismiss the bills of complaint, all three suits involve the same question, and the bills of complaint in each case are practically identical. Each seeks to have canceled, set aside, and held for naught, as a cloud upon their title, a certain paper writing, commonly called a 'disclaimer,' purporting to have been executed by one W. C. Wiley on the 3d day of June, 1887.

"The substantial and material allegations of the bills are as follows:

"That the plaintiffs are the owners in fee of the land involved in these proceedings, having obtained title thereto through mesne conveyances, tracing title to the commonwealth of Virginia; that the plaintiffs and their various predecessors in title have had open and notorious possession of said property and paramount title thereto, and have paid taxes thereon since the formation of Lincoln county and the grant from the commonwealth of Virginia; that the records of such title were destroyed by the fire which burned the Lincoln county courthouse in November, 1909, but that subsequently, by evidence taken before the commission of destroyed instruments, such instruments of title were readmitted to record; that some time after such fire there was also readmitted to record in a deed book of said county a paper writing, purporting to be a disclaimer, signed and sealed by one W. C. Wiley, a prior owner of said property, which said paper appears to have been recorded in said clerk's office in a certain release docket, some time prior to the recordation of plaintiffs' muniments of title, disclaiming all right, title, and interest in and to the property here in dispute, which said writing is in the words and figures following:

"'Whereas, certain actions of ejectment are now pending in the District Court of the United States for the District of West Virginia, in favor of "Henry McFarlan and others against Louis Adkins and others," "John P. Yelverton and others against Louis Adkins and others," "John P. Yelverton and others against Jeremiah Witcher and others," "Gustavus A. Sacchi against James A. Holley and others," "Gustavus A. Sacchi against John M. Reese and others," and "Gustavus A. Sacchi against A. J. Barrett and others," for the recovery of a tract of land heretofore conveyed by Henry McFarlan and others, trustees of the Guyandotte Land Company, to Gustavus A. Sacchi, by deed bearing date on the 27th day of June, 1865, and recorded in the office of the recorder of Cabell county, in Book A (New Series), page 104; and,

" 'Whereas, William C. Wiley is in possession of and claiming title to a portion of said land, so sought to be recovered, and is desirous of settling any and all conflicting claims to lands so occupied and claimed by him:

" 'Now, therefore, the said Wiley in consideration of the premises, and being released from all litigation in relation to the land hereinafter described, and from liability for costs in relation to the lands sought to be recovered, as aforesaid, doth hereby disclaim all right, title, claim, demand, or interest in and to all and any land set out and described in said declaration in said action of ejectment, except, all that certain piece or parcel of land, situate, lying, and being in the county of Lincoln and state of West Virginia, on Sugar Camp branch of Middle fork, and being part of a survey made for B. E. & Harvey Barrett and St. C. Ballard on the 3rd day of November, 1849, for 1,400 acres; the tract herein excepted being 130 acres out of said survey, and more particularly described in a deed from J. V. Sweetland to the said Wiley, dated March 15, 1884, recorded in Deed Book F, page 318.

" 'But the said Wl. C. Wiley hereby disclaims all title or interest in all coal (except so much as shall be required for domestic purposes) and iron ore, hydro-carbon oils, salt brine, natural gas and all other minerals in, upon or under the said tract of land herein excepted, with the exclusive right to the said plaintiffs, and those claiming under them, for rights of way for tram, rail, and wagon roads through said land so excepted, and to dig for and mine coal, iron ore, bore for oil or natural gas, and the necessary conveniences on said land for storing oil and coal, and the transmission of the same by the best and most convenient means to market.

" 'And the said William C. Wiley further agrees that the plaintiffs in either of said actions may take judgment against him in ejectment, for the interest by him herein disclaimed, and to that end he empowers any attorney of said court to appear for him in either of said actions, and consent that such judgment be entered, and that this disclaimer be filed as part of the record in such cause.

" 'Given under my hand and seal this 23d day of June, 1887.

" 'W. C. Wiley.   [Seal.]'

" 'State of West Virginia, Lincoln County—to wit:

" 'I, H. Hager, a Clerk Co. Ct. in and for said county, do hereby certify that ————, whose name is signed to the foregoing writing, bearing date the 22d day of June, 1887, this day acknowledged the same before me in my said county.

" 'Given under my hand this 22d day of June, 1887.

" 'H. Hager, Clerk.

" 'Clerk's Office County Court, Lincoln County, W. Va.

" 'This disclaimer was this day presented to me in my said office for record; thereupon the same, together with the certificate of acknowledgment thereon indorsed, is duly admitted to record in my said office this 12th July, 1887.

" 'H. Hager, Clerk.'

"Note.—The following indorsement was on the back of the above instrument: 'W. C. Wiley. Disclaimer. 130 A. Release Docket, page 168, 169, Ex. No. 38.'

"Note.—The following indorsement also appears:

" 'Clerk's Office of the County Court of Lincoln County, 14th day of March, 1911, to wit:

" 'The deed book containing the record of the foregoing deed and certificate of acknowledgment, and certificate of recordation thereof, having been lost by fire, consuming the records of said clerk's office, occurring on the 19th day of November, 1909, the foregoing deed or disclaimer was this day presented to me, the clerk of the said court, in the clerk's office aforesaid, for record anew. And thereupon, the said deed together with the certificate of acknowledgment, and certificate of recordation have, by me, been duly admitted to record anew in said clerk's office.

" 'Given under my hand this 14th day of March, 1911.

" 'W. C. Holstein,
" 'Clerk County Court of Lincoln County.

" 'Recorded in Deed Book No. 62, page 91.

" 'A true copy.  Attest:               'Albert F. Black, Clerk,
                                      " 'By ————, Deputy.'

"The certificate to this paper, it will be noted, omits the name of the maker thereof.

"It appears from the pleading before me that while this disclaimer was executed in connection with certain ejectment cases then pending, involving this property, it was never filed in such cases, but recorded in the county clerk's office of Lincoln county in a record book, commonly called a 'release docket'; that after the destruction of the courthouse of said county by fire, it was re-recorded and now is of record in a deed book of said county. It is this record which plaintiffs claim constitutes a 'cloud upon their title,' and which they seek to have set aside. In one of the above-styled suits, coercion is charged in connection with the signing of said so-called disclaimer, although this allegation is not substantiated by any supporting facts or allegations, and was not relied on in argument. The plaintiffs likewise embrace in their bill of complaint a naked allegation to the effect that the said paper was originally recorded in the release docket at the instance and by the direction of defendants.

"Defendants take the position that this paper is in reality and effect a quitclaim deed and divested W. C. Wiley of title to said property and vested title thereto in defendants, or their predecessors in title; furthermore, that this instrument duly signed, sealed and later recorded, estops Wiley or his successors in title from asserting title thereto."

In cases Nos. 1643 and 1644 there was a motion to remand, which motion was overruled, and the defendants filed written motions to dismiss the bills of complaint in each of the causes. A decree was entered dismissing them at the cost of plaintiffs, respectively, from which decree an appeal was taken to this court.

We will first dispose of what we conceive to be the first question involved in causes Nos. 1643 and 1644.

[1] It is contended by counsel for the appellant that they should have been remanded to the state court upon the ground that it appears from an inspection of the bills filed therein that the matter in dispute in each was of less value than $3,000. Among other things it is alleged in the defendants' petition that the value of the matter in dispute in this action "exceeds the sum or value of $3,000 exclusive of interest and cost." It has been repeatedly held that the removal of a case from a state court is based upon the petition for removal and that the averments of jurisdictional facts contained therein are to be taken as prima facie proof. In the case of Kessinger v. Hinkhouse (C. C.) 27 Fed. 883, the first sentence of the first syllabus is as follows:

"On a motion to remand a cause to the state court from which it was removed, the petition for removal is the basis of jurisdiction."

The following cases are very much in point: McDonald v. Flour Mills Co. (C. C.) 31 Fed. 577; Carlisle v. Sunset Telegraph & Telephone Co. (C. C.) 116 Fed. 896.

The plaintiff cannot base petition to remand upon an allegation made in a state court where, as in this instance, the petition for removal states in clear and concise language that the actual value of the property involved in this controversy is in excess of $3,000, exclusive of cost and interest.

In the case of Kessinger v. Hinkhouse, supra, the last sentence of the first syllabus says:

" * * * It is not in the province of the pleadings in the state court to state the grounds of jurisdiction in the United States Circuit Court. * * * "

254 F.—34

The court in that case also said, among other things: .

"* * * The allegation of the jurisdictional facts is quite foreign to the pleadings in the state court, and any averment of the facts giving jurisdiction here would be quite irrelevant and impertinent in the pleadings of the state court. The cause is removed upon the allegations and averments of fact as to the jurisdiction contained in the petition for removal. We must therefore, upon a motion to remand, accept the statement of the jurisdictional facts in the petition for removal as prima facie true. If they are not true, the party against whose consent the order of removal was made may contest them by a plea in abatement to the jurisdiction.   Clarkhuff v. Wisconsin, I. & N. R. Co. [C. C.] 26 Fed. 465."

As we have stated, the jurisdictional facts averred in the petition for removal constitute the basis of jurisdiction, in other words, the filing of the proper petition for removal eo instanti deprives the state court of jurisdiction and vests the United States court with jurisdiction. That court, to all intent and purposes, has absolute control over the matters in controversy and if the plaintiff desires to remand the same the burden is upon him to introduce proof sufficient to remove that burden in order to divest the federal court of its jurisdiction. Therefore, in this instance, plaintiff must challenge the averments contained in the petition for removal either by plea in abatement, answer, or denial in the nature of a plea to jurisdiction, and even the filing of the plea in abatement, answer, or denial in the nature of a plea to jurisdiction will not avail plaintiff, unless he supports the issue thus raised by evidence taken by the court.

In the case of Clarkhuff v. Wisconsin, I. & N. R. Co. (C. C.) 26 Fed. 465, the court, among other things, said:

"If the plaintiff in the state court desired to exclude the jurisdiction of the federal court, and if he could accomplish his purpose by mere pleading, he might in any imaginable case deprive his adversary of his constitutional and legal right of removal by alleging a fact to be true, having no foundation in truth. He might state the value of property involved to be less than $500, the contrary being the fact. He might allege untruly that his adversary is a citizen of the same state with himself. He might unite some mere nominal party as defendant with the real party in interest, falsely averring such nominal party to be a citizen of the same state with himself, and jointly concerned with the real party in the controversy. Thus might the plaintiff in the state court, by the simple process of pleading, without even the verification of his own affidavit, defeat the whole purpose of the removal act. It is manifest, therefore, that the party seeking the removal is at liberty to make averment against the facts as stated in the pleadings; and it is equally clear that the state court must receive the statement made in due form, and with proper verification by the petitioner for removal, as true prima facie, and proceed no further with the cause, but order the transfer of the case to the federal court. The cause comes here with the record thus made, and this court must primarily, by inspection of this record, determine whether or not the cause shall be remanded. Now, it is clear to my mind that, while the petition for removal must be received as true prima facie, and therefore as, upon the facts of the record, paramount to the pleadings filed in the state court, it cannot be taken in its turn as conclusive of the facts upon which the jurisdiction depends. If the petition for removal were taken as conclusive—if the party moving to remand were not at liberty to aver and show the jurisdictional facts to be contrary to the statement of them in the removal  petition—he would be in his turn, in this court, completely at the mercy of his adversary."

The averments contained in the petition for removal being sufficient to vest the court below with jurisdiction, and the plaintiff hav-

ing failed to put in issue the averments of the petition, and also failed to offer any evidence in support of the same, it necessarily follows that nothing occurred in the court below to deprive it of the jurisdiction which it acquired in a regular and orderly manner.

From what we have said it also necessarily follows that the refusal of the court below to remand these causes to the state court was eminently proper.

[2] The next question that arises is as to whether the court below erred in sustaining the motions to dismiss all three causes.

As we have stated, the object of these suits is to cancel and set aside disclaimers executed by William C. Wiley (in cases Nos. 1643 and 1644) and Frances Holton (in case No. 1645). These disclaimers are identical except as to parties and property involved.

It is first insisted that:

"(1) The claim of the complainants is barred by laches, lapse of time and neglect. The disclaimer mentioned in the bill of complaint was recorded in the clerk's office of the County Court of Lincoln county on the 12th day of July, 1887."

This squarely presents the question as to whether the complainant's cause of action is barred by laches, lapse of time and neglect of the complainants. In these causes the complainant is in possession of the land in question and comes into a court of equity for the purpose of having cloud upon his title removed, and in doing so to settle the question of title against one who holds adversely to him and is out of possession. It is well settled that under such circumstances, no matter how long the delay, complainant cannot be charged with laches. In the case of Gunnison Gas & Water Co. v. Whitaker et al. (C. C.) 91 Fed. 191, Adams, District Judge, in disposing of this phase of the question, said:

"Until the defendants asserted some right adverse to the complainant, the complainant could confidently repose upon its undisturbed possession, notwithstanding the illegal transactions complained of. There was, therefore, no occasion to resort to a court of equity for the relief prayed for in this case. Certainly not, so far as relates to the restraining order against defendants, until they began proceedings, or threatened proceedings, to assert some right under the void deed of trust. So far, therefore, as the injunctive relief is concerned there can be no complaint on the ground of laches. It is held, in the case of Ruckman v. Cory, 129 U. S. 387, 9 Sup. Ct. 316 [32 L. Ed. 728], that laches cannot be imputed to one in the peaceable possession of land under an equitable title for delay in resorting to a court of equity for protection against the legal title, since possession is notice of his equitable rights, and he need assert them only when he finds occasion to do so."

In the case of Smith v. Burrus, 139 Ga. 10, 76 S. E. 362, the court in the second syllabus said:

"An owner of land, in possession of it, who resorts to a court of equity to cancel a forged deed as a cloud on his title, is not chargeable with laches, though as much as 10 or 11 years may have intervened since his discovery of the forged deed."

The case of Coal Company v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063, is also very much in point, and in 8 A. & E. Enc.

of Law (2d Ed.) p. 124, a number of cases are cited to sustain this point.

Section 33 of Pomeroy's Equity Jurisprudence is as follows:

"A party in possession of land, who resorts to a court of equity to settle a question of title is not chargeable with laches, no matter how long his delay. Such a party is at liberty to wait until his title is attacked before he is obliged to act. The most frequent illustrations of this principle are found in suits by parties in possession to remove a cloud on title or to quiet title. Where, however, statutes permit such suits by parties out of possession, the doctrine of laches does apply, if the plaintiff is not in possession."

This rule is in harmony with common sense and fair dealing. The possession by the plaintiff was sufficient and complete notice to the defendants, and we think it is too late for them now to avail themselves of the defense that claimant's cause of action is barred by lapse of time.

[3, 4] However, it is further contended by counsel for the defendants in support of motion to dismiss that the allegations of the bills are not sufficient in law to show that complainants have title to the minerals mentioned in the disclaimers by adverse possession. It appears from the allegation of the bill that at the time the disclaimers were executed, in each instance plaintiff had chain of title in fee to the respective pieces of real estate, derived from the commonwealth of Virginia; also, that there has been a continuous, actual, adverse, open, and notorious possession of these respective tracts, under and by virtue of such chain since 1867 and since the grant of the real estate involved herein by the commonwealth of Virginia. Further, that any and all taxes charged and chargeable upon said real estate had been regularly paid while claiming under said chain of title, and that these plaintiffs and their predecessors had such possession of said real estate under their such chains of title and payment of taxes since the time of the execution of said disclaimer and until the time of the institution of these suits and at the time of the filing of the bills in these causes.

It is also alleged by plaintiffs that:

Said "disclaimer is a cloud upon the title to his said real estate, and that the said certificate of recordation of the same made by W. C. Holstein, clerk county court, Lincoln county, is false, misleading, and untrue, and tends to further cloud plaintiff's title to said real estate, and that for the reason hereinbefore set forth plaintiff is entitled to have said paper writing or disclaimer, and the said certificate of recordation thereof, set aside, canceled, and held for naught as a cloud upon the title of plaintiff to his said real estate hereinbefore mentioned and described."

We think that these allegations are full and complete, and that any objection thereto is without merit.

The allegations of the bill must be taken as true on the motion to dismiss. In other words, the motion to dismiss is in the nature of a demurrer. This being so, the question arises as to whether, under the plaintiffs' statement they are entitled to the relief demanded, there being no denial either by answer or otherwise to the material allegations made by the plaintiffs.

[5] The court below held that the paper writing or disclaimer is sufficient to divest W. C. Wiley of title to mineral underlying the real

estate in question and sufficient to vest title in defendant. In referring to this phase of the question the court said that the disclaimer "granted in no uncertain terms full mining rights and privileges." In other words, the court below held that the paper writing in question was equivalent to a deed and its provisions sufficient to transfer title from Wiley and to invest plaintiff with title to same, as we have said. This presents the question as to whether the disclaimer can be construed as a quitclaim deed, surrender, conveyance, release, or defeasance.

We are of the opinion that the instrument in question was in effect a quitclaim deed. In equity it was a contract by which the disclaimant said:

"I relinquish all interest in the land. You take it and do what you please with it as far as I am concerned."

In equity the disclaimant would be required to do anything necessary to make the instrument effective. This construction we think is in harmony with the provisions of section 3, chapter 72, of the Code of West Virginia (sec. 3780), which is as follows:

"Whenever, in any deed, there shall be used the words, 'The said grantor (or the said ———) releases to the said grantee (or the said ———) all his claims upon the said lands,' such deed shall be construed as if it set forth that the grantor (or releasor) hath remised, released, and forever quitted claim, and by these presents doth remise, release and forever quit claim unto the grantee (or releasee) his heirs and assigns, all right, title, and interest whatsoever, both at law, and in equity, in or to the lands and premises granted (or released) or intended so to be so that neither he nor his personal representative, his heirs or assigns, shall, at any time thereafter have, claim, challenge, or demand the said lands and premises, or any part thereof, in any manner whatever."

[6, 7] It is insisted that the recordation of this instrument in a release docket was insufficient to give constructive notice. It appears that this paper was recorded in a release docket at the instance of the predecessors in title of the defendants, therefore such recordation is binding upon them, they having given explicit instructions as to how the paper should be recorded and were content to receive the same with full knowledge as to where it had been recorded. It should be remembered, in this connection, that instruments of this character are required to be recorded in a particular book. The statute of West Virginia as found in Code W. Va. (C. E. Hogg) 1913, c. 73, §§ 2, 7, provides:

"Sec. 3805. The clerk of the county court of any county in which any deed, contract, power of attorney, or other writing is to be or may be recorded, shall admit the same to record in his office as to any person whose name is signed thereto, when it shall have been acknowledged by him or proved by two witnesses as to him, before such clerk of the county court."

"Sec. 3810. Every such writing when admitted to record shall, with all certificates of acknowledgment, and all plats, schedules and other papers thereto annexed or thereon indorsed, be recorded by, or under the direction of the clerk of the county court, in a well-bound book, to be carefully preserved."

The latter section is plain and clearly intended to make provision for classification of documents required to be recorded, so that one

engaged in abstracting titles to lands could, by inspecting the proper book, easily ascertain the complete history of the chain of title involved. If the statute had merely directed the recording, without specifying the particular book in which it should be recorded, then, under the authorities, the grantee could protect himself against subsequent purchasers for value by recording in any book; but when, as in this instance, the recording act requires the record to be made in a particular book, then the grantee cannot protect himself against subsequent purchasers for value, unless there is proper record in the book mentioned in the statute, and this is especially true when, in a case like the one now before this court, the grantee directs the wrong recording and receives the instrument back with a certificate of recordation in the wrong book.

It is also significant that chapter 76, § 5 (sec. 3862), which refers to release of liens, excludes all other papers from recordation therein. That section reads as follows:

"The clerk of the county court shall record and properly index all releases under this chapter and deeds of release admitted to record in his office, in a well-bound book *to be kept exclusively for the purpose*, and when any release or deed of release is recorded, he shall note the fact on the margin of the record or docket of the lien discharged thereby, with a reference to the book and page where the same is recorded." (Italics ours.)

Where the statute allows the record to be made in any book except one from which it is expressly excluded, recording in such excluded book is not notice to subsequent purchasers. This is precisely what occurred in the recordation of the instrument in question. To say that an improper recordation of this instrument was constructive notice would be in defiance of the rights of innocent purchasers and a complete disregard of any rule of construction of which we have knowledge. It would never occur to any lawyer or skilled abstractor to examine a release docket, after having found by an examination of the records wherein papers of this kind are required to be recorded that title was perfect. The provision which requires instruments of this character to be recorded is based upon the theory that the grantee, upon purchasing a tract of land, may be afforded an authentic record, showing the exact condition of the title to the property which he is about to purchase. Therefore, as we have said, papers of this kind are as a general rule required to be recorded in a certain book. Therefore, one having carefully examined that book and found perfect title, it would be absurd to say that grantee is bound by the recordation of the instrument in a book from which the recordation of instruments of this character are excluded.

For the reasons stated, we are of the opinion that the plaintiffs and those under whom they claim are innocent purchasers without notice and that the court below erred in dismissing these suits.

In view of what we have stated, we do not deem it necessary to enter into a discussion of the other assignments of error.

Therefore the decree of the lower court is reversed, with instructions for further proceedings in accordance with the views herein expressed.

Reversed.