## MILLER et al. v. ESTABROOK et al.

(Circuit Court of Appeals, Fourth Circuit. April 2, 1921.)

No. 1792.

1. **Evidence ☞173(3)—Abstract of destroyed records held admissible as best available evidence thereof.**

In ejectment action, evidence offered by plaintiff, to show that defendant M., in possession, derived title through one C., who had executed a disclaimer or quitclaim to the minerals on the land, consisted of evidence by an attorney that before destruction of the county records by fire he had made an abstract of the title to the land, which he produced; that his memory was not so refreshed by the abstract that he could testify to its correctness from memory; that his abstract showed the record of derivation of defendant M.'s title by successive deeds from C.; that it was witness' habit in making abstracts to note defects or limitations in the deeds: and that there were no notations that would affect the derivation of defendant's title from C. *Held*, that the evidence and the abstract itself were admissible as the best available evidence of the record; the evidence and abstract being admitted over the sole objection that the witness had no recollection of the record and that his memory was not refreshed by inspection of his abstract, and without objection that plaintiffs should have introduced the original deeds or proved their loss.

2. **Lost instruments ☞8(3)—Evidence of contents must be clear and convincing.**

Evidence as to lost documents must be clear and convincing.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Appeal and error** &#9758;231(3)—**Objections to evidence must be specific.**

Objections to evidence, without acquainting the trial court of the grounds, will not be considered by the appellate court.

**4. Appeal and error** &#9758;232(2)—**Ground of objection, different from that below, not considered.**

Where the objection, on trial, to an exhibit, the copy of a will, was that the copy did not show it was ever probated in the county in New York state where testator lived, the objection could not be made, on appeal, that there was no evidence that the will was ever probated in the county in West Virginia where the land sued for was located.

**5. Evidence** &#9758;348(2)—**Will, properly authenticated, admissible.**

A copy of a will, properly authenticated under Rev. St. 905 (Comp. St. § 1519), was admissible in evidence.

**6. Mines and minerals** &#9758;55(2)—**Instrument held quitclaim of mineral rights in land; "release;" "disclaimer."**

Under Code W. Va. 1913, c. 72, §§ 3, 11 (secs. 3780, 3790), an instrument, given by defendant in ejectment, in settlement of conflicting claims to the land, disclaiming all interest except in 95 acres, and, as to that, disclaiming title to the mineral title and rights, *held* a quitclaim, rather than a mere disclaimer; a "release" being the act or writing by which some claim or interest is surrendered to another person, the giving up or abandoning a claim or right to the person against whom the claim exists, or the right is to be exercised and enforced, and a "disclaimer" being technically a pleading alleging that the defendant has not any right or title, and that he does not claim the subject-matter of the suit.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Disclaimer; Release.]

**7. Mines and minerals** &#9758;55(1)—**Disclaimer of mineral rights held not too indefinite as to naming grantees to operate as quitclaim.**

An instrument in an ejectment suit, disclaiming title to minerals, was not inoperative as a quitclaim to minerals on the ground that plaintiffs in the cause had parted with their title before the date of the instrument, where the surrender and relinquishment was to the plaintiffs and those claiming under them, and the persons claiming under plaintiffs at the time of the execution of the instrument were easily ascertainable, so that it was not necessary that they should be named.

**8. Mines and minerals** &#9758;55(1)—**Disclaimer or quitclaim of minerals not binding on parties claiming under disclaiming party without notice thereof.**

A disclaimer or quitclaim deed of minerals would not be binding, as a severance of the surface and minerals, on those who purchased and held under the disclaiming party, unless they had actual or constructive notice of the disclaimer or quitclaim.

**9. Mines and minerals** &#9758;55(1)—**Quitclaim deed of minerals held so recorded as to be constructive notice; "well-bound book."**

Under Code W. Va. 1913, c. 73, §§ 2, 7, 7a, 11 (secs. 3805, 3810, 3812), Id. c. 74, § 5 (sec. 3835), and Id. c. 76, § 5 (sec. 3862), the contention of defendants in ejectment that a disclaimer or quitclaim of minerals by their predecessor in title was not binding on them, because not properly recorded, in that, although not a release, it was recorded in the book provided by chapter 76, § 5 (sec. 3862), to be kept exclusively for the purpose of recording releases and deeds of release, could not be sustained, where the book in which the instrument was recorded was not a book set apart exclusively for the record of releases and deeds of release, but contained other records; for the only requirement of chapter 73, § 7 (sec. 3810), as to the book for recording deeds, is that it be a "well-bound book," which does not exclude such a book as was used, and if the clerk recorded the instrument in one of two or three such books, preserved and indexed as required by the statute, so that the books and

contents were readily accessible, this would be a substantial compliance with the law.

**10. Vendor and purchaser ☞231(7)—Grantee protected by delivering deed for record.**

Even if a West Virginia quitclaim deed was recorded in a wrong book, the grantees and their successors were protected when they lodged the deed with the clerk for record, and he certified to them on the instrument that it had been properly recorded; and an unsigned memorandum on the back of the deed, "Release Docket A," would not charge the grantees with notice that the deed had been recorded in a book used exclusively for releases, where there was no such book, in view of the clerk's duty to record it in the proper book.

**11. Judgment ☞710—Determination as to rights under tax deed not binding on one not party.**

In ejectment suit to obtain title to minerals, where, to show common source of title and to defeat claim of adverse possession, plaintiffs gave evidence of deed from E. to defendants' predecessor, conveying the surface and reserving the minerals, the court properly excluded a decree, offered by defendant, to the effect that a tax deed to E. was to defraud the state of taxes for prior years, and that E.'s purchase was really for the benefit of S., the prior owner, and operated only as a redemption from the taxes for which the land was sold; defendant's predecessor having purchased from E. before the decree, and not being a party to the suit, and not bound by it, and there being no showing that the prior taxes were not afterwards paid, and there being no decree divesting the title of S., the owner, so that the tax deed to E. was in any event good against him.

**12. Taxation ☞319(2), 728, 776—Tax deed did not convey minerals, where party whose title was thereby divested owned no minerals; sale carries both surface and minerals unless separately assessed; presumed that law was complied with in making assessment.**

Defendant's title to the minerals was not shown by a deed to defendant for delinquent taxes of one to whom the surface had been conveyed by deed reserving the minerals, for the tax deed conveyed only whatever title the person taxed had, and, although a sale of land for taxes will carry both surface and minerals, unless they are separately assessed, the statute requires a separate assessment when there has been a severance, and where there has been a severance the presumption is that the law was complied with and a separate assessment made.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; Benjamin F. Keller, Judge.

Action by George L. Estabrook and another, trustees of the Lincoln County Land Association, against Joseph D. Miller and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

E. L. Hogsett, of Huntington, W. Va., and D. E. Wilkinson, of Hamlin, W. Va., for plaintiffs in error.

W. C. W. Renshaw and Cary N. Davis, both of Huntington, W. Va. (J. S. Clark and H. A. McCarthy, both of Philadelphia, Pa., and Vinson, Thompson, Meek & Renshaw and Fitzpatrick, Campbell, Brown & Davis, all of Huntington, W. Va., on the brief), for defendants in error.

Before KNAPP and WOODS, Circuit Judges, and BOYD, District Judge.

WOODS, Circuit Judge. In this action of ejectment, instituted by George L. Estabrook and Sabin W. Colton, Jr., trustees, against a

number of defendants, the defendant Joseph D. Miller disclaimed title except to one tract of 40 acres, and the defendant Jane Miller disclaimed title to all but three tracts of 42 acres, 14½ acres, and 10 acres. On trial of the title to these tracts the District Judge directed a verdict in favor of the plaintiffs for all the minerals on 38½ acres of the 40-acre tract claimed by Joseph D. Miller, and on the 14½ acres claimed by Jane Miller, and in favor of Jane Miller for the tract of 10 acres and 42 acres claimed by her. The defendants Joseph D. Miller, Jane Miller, and Jennings Oil Company, their lessee, assign error in the admission and exclusion of testimony, and in the direction of a verdict in favor of the plaintiffs for minerals on the two tracts of 38½ acres and 14½ acres.

The plaintiffs traced their title to the two tracts of 38½ and 14½ acres from a grant to James Carnohan, dated November 13, 1786, for 30,000 acres, and a grant to Samuel Smith, dated June 29, 1797, which overlapped. The title under the two grants became united in Henry McFarlan in 1854, and from him plaintiffs derive their title. The plaintiffs also undertook to show common source and their superior title under it. The defendants' adverse possession would defeat plaintiffs' title, unless the District Judge was right in holding that the possession of the defendants and their predecessors in title was limited to the surface by reason of the severance of the surface and minerals.

We consider first the proof of title to the tract of 38½ acres, and of the severance of the surface and minerals. The vital point in plaintiffs' case is whether there was a severance of the surface and minerals, of which defendants and their predecessors in title had due notice. They claim that a severance was effected in 1888 in the course of plaintiffs' title by the following instrument, termed a disclaimer, which recites in full the circumstances under which it was executed by A. C. Chaney then in possession of the land:

"Whereas, certain actions of ejectment are now pending in the District Court of the United States for the District of West Virginia, in favor of 'Henry McFarlan and others against Lewis Adkins and others,' 'John P. Yelverton and others against Jeremiah Witcher and others,' 'Gustavus A. Sacchi against James A. Holley and others,' 'Gustavus A. Sacchi against John M. Reece and others,' 'Gustavus A. Sacchi against A. J. Barrett and others,' for the recovery of a tract of land heretofore conveyed by Henry McFarlan and others, trustees of the Guyandotte Land Company to Gustavus A. Sacchi by deed bearing date on the 27th day of June, 1865, and recorded in the office of the recorder of Cabell county, in Book A (new series), page 104; and

"Whereas, Alex C. Chaney is in possession and claiming title to a portion of said land, so sought to be recovered, and is desirous of settling any and all conflicting claims to lands so occupied and claimed by him:

"Now, therefore, the said Chaney, in consideration of the premises and of being released from all liability for costs in relation to lands sought to be recovered as aforesaid, doth hereby disclaim all right, title, claim, demand, or interest in and to all and any land set out and described in said declarations in said actions of ejectment, except a piece or parcel of land situate, lying and being a survey made by Samuel Harris on the 28th day of September, 1855, for 95 acres. But the said Chaney hereby disclaims all title to or interest in all coal (except so much as shall be required for domestic purposes) and iron ore, hydrocarbon oils, salt brine, natural gas, and all other minerals in, upon or under the said tract of land herein excepted, with the exclusive right to the plaintiffs and those claiming under them for the rights of

way for tram, rail, and wagon roads through said land so excepted, and to dig for and mine coal, iron ore, bore for oil or natural gas, and the necessary conveniences on said land for storing oil and coal, and the transmission of the same by the best and most convenient means to market.

"And the said Chaney further agrees that the plaintiffs in either of said actions may take judgment against him in ejectment, for the interest by him herein disclaimed, and to that end he empowers any attorney of said court to appear for him in either of said actions, and consent that judgment be entered and that this disclaimer be filed as part of the record in such case.

"Given under my hand and seal this 18th day of September, 1888.

                                        his
                        "A. C. X Chaney.  [Seal.]"
                                        mark

[1, 2] 1. It was stipulated that the courthouse of Lincoln county, where the land was located, and all the records, were destroyed by fire in November, 1909. As evidence that the defendant Joseph D. Miller derived title through Chaney the District Judge admitted the evidence of Mr. Pendleton L. Williams, an attorney, to the effect that before the destruction of the records he had made an abstract of the title to the land embraced in the Smith grant, including the land in dispute, which he produced; that his memory was not so refreshed by the abstract that he could testify to its correctness from memory; that his abstract showed the record of derivation of defendant Joseph D. Miller's title by successive deeds from A. C. Chaney; that it was his habit in making abstracts to note any defect or limitation in the deeds; and that there were no notations that would effect the derivation of the defendants' title from Chaney. This evidence and the abstract itself were admitted over the sole objection that the witness had no recollection of the record and that his memory was not refreshed by inspection of his abstract. There was no objection on the ground that the plaintiffs should have introduced the original deeds or proved their loss. We think the abstract was clearly admissible as the best available evidence of the record. 10 R. C. L. 909, and authorities cited. There was no evidence in conflict with the abstract of Mr. Williams. On the contrary, the evidence of the defendant Miller as to the source of his title and possession strongly confirmed it. Taking all the evidence together, it met the requirement that evidence as to the existence of lost documents must be clear and convincing.

[3-5] 2. Error is assigned "in admitting in evidence for the plaintiffs the title papers filed as Exhibits 1 to 50, inclusive, and in admitting each of them." There was a general objection made at the trial to the admission of all of plaintiffs' exhibits, but no grounds were stated except as to Exhibits 1, 4, 21, and 25. Objections to evidence, without acquainting the trial court of the grounds, will not be considered by the appellate court. The objections to Exhibits 1, 4, and 25 were not pressed in this court. The objection made to Exhibit 21, copy of will of William G. Sands, in the trial court, was that "the copy of the will offered in evidence does not show that it was ever probated in the county of Chenango, N. Y., where William G. Sands lived." The only objection pressed here is that there was no evidence that the will was ever probated in Lincoln county, W. Va.

"Where a party excepts to the admission of testimony, he is bound to state his objection specifically, and in a proceeding for error he is confined

to the objection so taken. If he assign no ground of exception, a mere objection cannot avail him." Burton v. Driggs, 20 Wall. 125, 22 L. Ed. 299; Noonan v. Caledonia Mining Co., 121 U. S. 393, 400, 7 Sup. Ct. 911, 30 L. Ed. 1061.

Besides, the copy of the will, being properly authenticated under R. S. § 905 (Comp. St. § 1519), was admissible in evidence.

[6] 3. This brings us to the question: Was the instrument above quoted, called a disclaimer, in effect a quitclaim deed from Chaney, so that his possession thereafter would be limited to the surface alone?

In Woodall v. Clark, 254 Fed. 526, 166 C. C. A. 84, we held a paper in almost identical language to be in effect a quitclaim deed. Careful reconsideration has strengthened that conclusion. It is true an ordinary disclaimer is merely a pleading in a case to escape costs, but it may be much more. In Prescott v. Hutchinson, 13 Mass. 440, the court said as to a disclaimer by a tenant:

"At common law such a disclaimer was never considered as a bar to the action. So far from showing that the defendant had no right to the demanded premises, it was an acknowledgment of his title. It operated, in some respects, as a release by the tenant. If two tenants were jointly sued, a disclaimer by one of them generally vested the whole in the other co-tenant. So, if only one were sued, and disclaimed, whatever estate he had was, in effect, passed to and vested in the defendant. He might immediately enter, and would become seised according to the title set forth in his writ; and the tenant would be afterwards estopped from disputing that title. A disclaimer, instead of being a plea to the action, resembles so far a release or conveyance of the land, that, in general, no person could disclaim, who was incapable of conveying the land." Kentucky Union Co. v. Cornett, 112 Ky. 677, 66 S. W. 728.

The Code of West Virginia of 1913 provides:

"Sec. 2780. *Form of Release.* Whenever, in any deed, there shall be used the words, 'The said grantor (or the said ———) releases to the said grantee (or the said ———) all his claims upon the said lands,' such deed shall be construed as if it set forth that the grantor (or releasor) hath remised, released, and forever quitted claim, and by these presents doth remise, release, and forever quitclaim unto the grantee (or releasee) his heirs and assigns, all right, title, and interest whatsoever, both at law, and in equity, in or to the lands and premises granted (or released) or intended so to be, so that neither he nor his personal representative, his heirs or assigns, shall, at any time thereafter have, claim, challenge, or demand the said lands and premises, or any part thereof, in any manner whatever."

"Sec. 3790. *Deeds Not Conforming to Prescribed Form—Validation.* Any deed, or part of a deed, which shall fail to conform to the provisions of this chapter, shall nevertheless be as valid and effectual, and shall bind the parties thereto, as far as the rules of law and equity will permit, as if it had so conformed."

A release is "the act or writing by which some claim or interest is surrendered to another person." Anderson Law Dict. It is "the giving up or abandoning a claim or right to the person against whom the claim exists or the right is to be exercised and enforced." Bouvier's Law Dict. Technically a disclaimer is a pleading "alleging that the defendant has not any right or title and that he does not claim the subject matter of the suit." Daniell's Ch. Prac. 808.

Applying these definitions, it is evident that the instrument here under consideration is more than a mere plea of disclaimer. So far

from alleging the absence of interest in the land, Chaney asserts that it is made for the purpose of settling conflicting claims to the land occupied and claimed by him. Part of its consideration was the settlement of these claims. The suit which the instrument was intended to settle was for the recovery of possession of the land, both surface and minerals. The instrument is in its essence a contract to settle the suits for the lands claimed by both parties on the terms that the plaintiffs should have all the land claimed except 95 acres, and that of the 95 acres Chaney should have the surface, and the plaintiffs and those claiming under them should have the minerals and the rights necessary to the use of them. It was signed, sealed, and acknowledged by Chaney, and accepted by the plaintiffs, and was therefore binding on all parties. This being the evident purpose of the instrument, it makes no difference that no technical words of conveyance were used. What Chaney meant to say was that he relinquished and surrendered all claim to the land then in controversy, in consideration of being relieved of costs and having his claim confirmed to the extent of the surface of the 95 acres. Under the modern doctrine of giving effect to the intention in deeds as well as in wills, this was in effect a quitclaim deed. Numerous instances in which this doctrine has been applied to informal instruments and nontechnical words will be found in the textbooks. See 18 C. J. 178.

[7] 4. The objection is made that the disclaimer could not operate as a deed, because the plaintiffs in the cause in which the disclaimer was made had parted with their title long before September 18, 1888, the date of the instrument. The argument is forceful, but we do not think it can prevail. Surrender and relinquishment of Chaney's claim to the minerals was to the plaintiffs and those claiming under them. The persons claiming under the plaintiffs in that suit, at the time of the execution on September 18, 1888, were easily ascertainable, and it was not necessary that they should be named. Webb v. Den, 17 How. 576, 15 L. Ed. 35; 18 C. J. 174.

[8] 5. But this deed of Chaney, severing the surface and minerals, would not be binding on those who purchased and held under Chaney, unless they had actual or constructive notice. The other vital question, then, is whether there was such a record of the deed as to charge those deriving title from Chaney, so that their adverse possession of the surface would be ineffectual to defeat plaintiff's claim to the minerals.

[9] The provisions of the Code of West Virginia as to recording, at the date of this instrument, were:

Chapter 73. § 2: "The clerk of the county court of any county in which any deed, contract, power of attorney, or other writing is to be or may be recorded, shall admit the same to record in his office as to any person whose name is signed thereto, when it shall have been acknowledged by him or proved by two witnesses as to him, before such clerk of the county court."

Chapter 73. § 7: "Every such writing when admitted to record, shall, with all certificates of acknowledgment, and all plats, schedules and other papers thereto annexed or thereon indorsed, be recorded by, or under the direction of the clerk of the county court, in a well bound book, to be carefully preserved; and there shall be an index to such book as well in the name of the

grantee as of the grantor. After being so recorded, such writing may be delivered to the party entitled to claim under the same."

Chapter 74, § 5: "Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or mortgage, conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract or deed may be."

Chapter 76, § 5: "The clerk of the county court shall record and properly index all releases under this chapter, and deeds of release admitted to record in his office, in a well bound book to be kept exclusively for the purpose, and when any release or deed of release is recorded, he shall note the fact on the margin of the record or docket of the lien discharged thereby, with a reference to the book and page where the same is recorded."

Chapter 73, § 7a. II: "Hereafter all deeds and other writings, except wills, admitted to record in the recorder's office of any county in this state, shall be indexed in said general index in the name of the grantor and grantee. (Acts 1871, c. 91.)"

The contention of defendants is that the instrument here involved was recorded in the book provided by section 5, chapter 76, of the Code, to be kept "exclusively" for the purpose of recording releases and deeds of release; that it was not a release and hence its record in that book could have no effect.

Woodall v. Clark, 254 Fed. 526, 166 C. C. A. 84, was a suit in equity to remove a similar instrument as a cloud on complainant's title. The appeal was from a decree dismissing the bill for lack of equity. The bill alleged that the instrument, held to be in effect a quitclaim deed, was recorded by direction of the grantees in a book provided by statute for the recording of releases and deeds of release exclusively; and that the clerk's certificate on the instrument showed that it was recorded in the wrong book. On the motion to dismiss these allegations were taken as true, and it was decided that the record, under those circumstances, of a quitclaim deed in a book provided exclusively for releases and deeds of release was no record. That decision is not controlling here. There is no evidence in this case that the plaintiffs or their predecessors in title directed the recording; and the clerk certified on the instrument that it had been properly recorded. Furthermore, the plaintiffs on the trial in this case introduced the record book, and the question now before us is whether it is one which section 5, chapter 76, required to be used exclusively for recording releases and deeds of release, or one provided and kept under section 7, chapter 73, for the recording of deeds and other similar instruments.

It could not have been the book required by section 5, chapter 76, to be used exclusively for the record of releases and deeds of release, for the use of this book began in 1867 and that statute was enacted in 1882. It contains the record of a number of releases of deeds of trust, but it contains also one record of assignment of notes, one assignment of note and deed of trust, a deed of bargain and sale in 1867, one quitclaim deed in 1872, one release deed of land in 1878, and a deed of conveyance of land in 1890.

The only requirement of section 7, chapter 73, as to the book for recording of deeds, is that it shall be a "well-bound book." This requirement does not exclude the recording of deeds in the book here

in question, which was clearly not set apart as the book to be used exclusively for the record of releases and deeds of release. Nor does this statute necessarily mean that the purpose and plan of the law would be defeated if the clerk kept more than one well-bound book for such records. We think, if the clerk recorded the instruments mentioned in one of two or three such books, preserved and indexed as required by the statute, so that the books and contents were readily accessible to all persons concerned with land titles and liens, this would be a substantial compliance with the law. From these considerations we cannot resist the conclusion that this instrument signed by Chaney was so recorded as to give constructive notice of its existence.

[10] 6. But, even if the instrument was recorded in the wrong book, the grantees and their successors in title were protected when they lodged the deed with the clerk for record. The clerk certified to them on the instrument that it had been properly recorded. The unsigned memorandum on back of the deed, "Release Docket A," could not be stretched to charge the grantee with notice that this paper had been recorded in a book used exclusively for releases, because there was no such book, and because it was the duty of the clerk, and not the grantee, to see that the record was in the proper book.

On the question whether, under a statute which requires a deed to be recorded before it can operate as constructive notice, a delivery of the deed to the recording officer for record operates as constructive notice to subsequent creditors and purchasers, although it may not be recorded at all, or recorded in the wrong book, the courts of last resort are in conflict, as, will be seen by reference to the cases collated in 96 Am. St. Rep. 398, 4 Ann. Cas. 561, Ann. Cas. 1913B, 68, and 23 R. C. L. 215. In West Virginia the rule is established that the grantee is protected from the time he delivers the deed to the proper officer for record. Troy Wagon Co. v. Hutton, 53 W. Va. 157, 44 S. E. 135; Virginia Building & Loan Ass'n v. Glenn, 99 Va. 460, 39 S. E. 136.

[11] 7. To show common source of title to the 14½ acres claimed by Jane Miller, and to defeat the claim of adverse possession, plaintiffs relied on the testimony of Mr. Williams to the effect that his abstract, made before the records were burned, showed a deed dated September 13, 1888, from Samuel Eddy to John L. Miller, under whom Jane Miller claimed, conveying the surface and reserving the minerals. Samuel Eddy had a deed from Hager, clerk, made under a tax sale of lands of William G. Sands for delinquent taxes.

The defendant Jane Miller contends that this deed could not operate as a severance of the surface and minerals, because this tax title to Samuel Eddy was adjudged to be in fraud of the state, and the purchase price paid by him was adjudged to be nothing more than a redemption. To support this contention she offered the record of the suit of the State of West Virginia against Samuel Eddy and others, which contained a decree adjudging that this sale was made for the taxes of 1883 and 1884 to defraud the state of its taxes for the years 1879, 1880, 1881, and 1882, and that the purchase by Eddy was really for the benefit of the owner, and operated only as a redemption of the land from the taxes of 1883 and 1884. The District Judge prop-

erly excluded this record for these reasons: Miller, who had purchased from Eddy before the date of the decree above recited, was not a party to the suit and not bound by it; the subsequent proceedings, if any, were not offered, and from anything that appeared the taxes from 1879 to 1882, inclusive, were afterwards paid; there was never any decree divesting the title of Sands, the owner, and the tax deed to Eddy in any possible view was good against him.

[12] 8. Jane Miller also claims under a deed to Joseph Miller from Robert Hager, clerk, dated July 31, 1900, for delinquent taxes of Joseph Miller. At that time the surface and minerals had been severed by the conveyance from Eddy to John L. Miller. The tax deed only conveyed whatever title Joseph Miller had. Sult v. Hochstetter Oil Co., 63 W. Va. 317, 61 S. E. 307. It is true that a sale of land for taxes will carry both surface and minerals, unless they are separately assessed. Wellman v. Hoge, 66 W. Va. 234, 66 S. E. 357. But the statute of West Virginia requires a separate assessment when there has been a severance; and we have recently held that, where there has been such a severance, the presumption is that the law was complied with and a separate assessment made. Dingess et al. v. Huntington Development & Gas Co., 271 Fed. 864, decided February 15, 1921.

It follows that this tax sale was ineffectual to convey the title to the minerals. We can find no error.

Affirmed.