## HUNTINGTON DEVELOPMENT & GAS CO. v. ASHWORTH et al.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1921.)

No. 1870.

1. Lost instruments ⟨key⟩8(1)—Recording raises presumption of proper execution, consideration, delivery, and acceptance.

   A lost deed, proven to have been recorded before destruction of records by fire, will be presumed to have been properly executed and acknowledged, and to have been given for a valid consideration, and to have been delivered and accepted.

2. Lost instruments ⟨key⟩8(3)—Evidence held to prove that lost deed contained reservation of minerals.

   Evidence held to prove that lost deed, proven to have been recorded before the destruction of the records by fire, contained a reservation of the mineral rights.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of West Virginia, at Huntington; Benjamin F. Keller, Judge.

Suit by the Huntington Development & Gas Company against W. J. Ashworth and others to quiet title. From an adverse decree as to certain part of the tract claimed, plaintiff appeals. Reversed.

W. C. W. Renshaw and Cary N. Davis, both of Huntington, W. Va. (J. S. Clark and H. A. McCarthy, both of Philadelphia, Pa., and Vinson, Thompson, Meek & Renshaw and Fitzpatrick, Campbell, Brown & Davis, all of Huntington, W. Va., on the brief), for appellant.

Henry Simms and E. E. Young, both of Huntington, W. Va., for appellees.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

KNAPP, Circuit Judge. The appellant, Huntington Development & Gas Company, herein called plaintiff, brought this suit to remove, as clouds upon its title to the minerals underlying two tracts of land, one of 60 and the other of 95 acres, in Lincoln county, W. Va., certain deeds and leases to the several defendants. From an adverse decree as to the 95-acre tract it prosecutes this appeal.

Shortly stated, the case is this: Some time in 1888 or 1889, one Samuel Eddy, plaintiff's predecessor in title, executed a deed to W. B. Ashworth, under whom defendants claim, which deed, as will for the present be assumed, covered the 95 acres in question. If that deed conveyed the surface only, and reserved to the grantor the underlying minerals, as plaintiff contends, it is entitled to the relief prayed for in its bill; if the deed contained no such reservation, the bill was properly dismissed. It is agreed that the courthouse of Lincoln county was burned in November, 1909, and that all the records in the clerk's office, where the disputed deed is alleged to have been recorded, were completely destroyed. The original deed is lost, and cannot be found. Did it contain a reservation of the minerals and mineral rights?

The plaintiff's proofs are these: One Talbot, a civil engineer and surveyor, testified that in the course of his employment by the Guyan Oil Company, in surveying mineral lands in that section, he made an examination of the records in the courthouse of Lincoln county, shortly before it burned, for the purpose of obtaining the descriptions in "compromise deeds"; that is, deeds of lands in which there had been a severance of the surface and mineral titles. He produced the note-book or ledger used by him at the time, entitled, "Compromise Deeds, Carroll District, Lincoln County, copied during the month of November, 1909," and testified that all the entries were in his own handwriting. Examined further, he said:

"A. I find that I have a description of a deed from Eddy to W. B. Ashworth for 95 acres on Big creek of Trace fork.

"Q. Please state the book and page of recordation if your notes show it. A. Book 'K,' page 133.

"Q. Please state from your notes what was the description of the tract as contained in that deed? A. My notes state that Eddy conveys 95-acre survey made for M. J. Ashworth on 16th of September, 1849."

The other witness for plaintiff was James A. Holley, who lived in Lincoln county up to 1898, and was there clerk of the circuit court. He has since been adjutant general of the state, mayor of Charleston, and clerk of the Supreme Court of Appeals. He was also the commissioner to whom was referred for certain investigations the case of the state of West Virginia against Samuel Eddy and others, and as such made and filed a report in June, 1896. He testified to making an investigation of the records, to see what lands had been compromised with Samuel Eddy and others, who owned or claimed a tract of land in Lincoln county of 89,500 acres, known as the "Smith surveys," which was later acquired by the trustees of the Lincoln County Land Association. As a trustee of that association and its general land agent for some years, he was presumably familiar with the titles to the properties owned by it, commonly called "the company land." Refreshing his recollection from the report mentioned, and answering a question put to him, he said:

"Yes; on page 68 of my report, 95 acres reported in the name of W. J. (B) Ashworth, in which I state the surface conveyed, recorded April 3, 1889, Book 'K,' page 133, Hatter's run. This was a release or conveyance of the company to Ashworth for the surface of this 95 acres."

And, replying to a further question, he said:

"The reservations were the mineral interests. The company has always in conveyances and compromises retained the mineral interests, and released or conveyed to the parties the surface only."

It is admitted in answer that—

"From the year 1906 to and including the year 1916, said land has been assessed and charged as surface to respondents."

True, they say that prior to 1906 it was entered on the land books "in the name of W. B. Ashworth as fee," and that the change was made without their knowledge or consent, but it seems to us highly significant that the charge to them as surface only should begin directly after the passage of an act which provided for a reassessment of lands in West Virginia, and required them to be thereafter assessed at their true and actual value, especially so, when it is borne in mind that under the laws of West Virginia, which defendants must be presumed to know, the failure of an owner to have his lands properly entered upon the land books results, after five years, in the forfeiture of the estate not charged and the transfer of title thereto to the state.

[1, 2] Against this nothing appears. The defendants called no witness, and offered no evidence. The plaintiff's proofs, therefore, with all legitimate inferences therefrom, stand wholly unopposed. And we think they are sufficient to establish its claim to the mineral rights in the 95 acres. That Samuel Eddy gave a deed to W. B. Ashworth, about the time alleged, is not seriously disputed. The fact that such a deed was recorded in April, 1889, is proven beyond reasonable doubt; and the resulting presumptions are that the deed was properly executed and acknowledged, that it was given for a valid consideration, and that it was delivered and accepted. 25 Cyc. 1625. The question then is not of the existence of the deed, but merely whether it contained a reserva-

tion of the minerals; and that question, in our opinion, is ansered in the affirmative by competent and convincing evidence. Miller et al. v. Estabrook, 273 Fed. 143, decided by this court April 2, 1921. It is certainly difficult to believe that Talbot, who was seaching for compromise deeds, entered this deed in his notebook as a deed of that kind, unless the record he read was the record of a deed which reserved the minerals in the lands described. It is equally difficult to believe that General Holley, appointed to make investigation of surface conveyances, filed an official report, which, as respects the matter in hand, was not in accordance with the truth. Nor, in view of the West Virginia statute, is it easy to understand why the defendants, for 10 years preceding this suit, paid taxes only on the surface of the tract, if they claimed to be owners in fee. In short, we are constrained to hold that the plaintiff has established its case.

Some question is made as to the number of acres and identity of the lands embraced in the Eddy conveyance, but the argument is quite unconvincing. Talbot's notes show that the deed he found of record "conveys 95-acre survey made for M. J. Ashworth on 16th of September, 1849," on Big creek of Trace fork. Holley's report shows a surface deed of 95 acres on Hatter's run, reported in the name of W. J. Ashworth, and he testifies to the impression or understanding that "Hatter's run empties into Big creek of the Trace fork." Moreover, it is admitted that—

The map in evidence "correctly shows the location of said 60 acres and of the Michael J. Ashworth 95 acre survey, and correctly shows the locations of the land claimed by the defendants with reference to said two tracts."

In the absence of anything of contrary import, we deem it not doubtful that the land in controversy is the identical land described in the M. J. Ashworth 95-acre survey of 1849.

Reversed.