# CHARLESTON

## WALLACE v. ELM GROVE COAL CO.

Submitted September 14, 1905.     Decided December 5, 1905.

| | |
|---|---|
| 58 | 449 |
| 60 | 377 |
| 58 | 449 |
| 63 | 229 |
| 63 | 326 |
| 58 | 449 |
| 66 | 98 |

1. MINES AND MINERALS—*Conveyance of Coal—Effect.*

   A conveyance of the underlying coal with the privilege of its removal from under the land of the grantor affects a severance of the right to the surface from the right to the underlying coal and makes them distinct corporeal hereditaments. The presumption that the party having the possession of the surface has the possession of the subsoil also, does not exist when these rights are severed. (p. 453.)

2. MINES AND MINERALS—*Owner of Surface—Adverse Possession.*

   The owner of the surface when the underlying coal has been so conveyed can acquire no title to the coal by his exclusive and continued possession of the surface; nor does the owner of the coal

'lose his right or his possession by any length of non-usage. To
lose his right he must be disseized, and there can be no disseizin
by an act which does not actually take the coal out of his posses-
sion. (p. 454.)

3.  QUIETING TITLE---*Possession.*

A bill in equity to remove a cloud over title to land cannot be
maintained unless the plaintiff have both good title and actual
possession. (p. 455.)

Appeal from Circuit Court, Ohio County.

Bill by James Y. Wallace against the Elm Grove Coal
Company. Decree for defendant, and plaintiff appeals.

*Affirmed.*

Rehearing denied January 9, 1906.

HUBBARD & HUBBARD, for appellant.
HANDLAN & WIEDENBUSCH, for appellee.

McWHORTER, JUDGE :

John Blayney and John McCoy were the owners of two
contiguous tracts of land making together one hundred and
sixty-five acres.    On the 17th day of June, 1859, they con-
veyed to Joseph Connelly, Joseph Ford, Otho W. Heiskell
and John Handlan all the coal underlying the two tracts of
land. By regular conveyances the title to both tracts became
vested in John Blayney, who conveyed the same to Samuel
Roney on October 4th, 1870; Samuel Roney and wife con-
veyed the same by deed of trust to I. F. Jones, trustee, who,
by deed dated August 22nd, 1877, conveyed the same one
hundred and sixty-five acres to James Y. Wallace.    It seems
that the conveyances made after the coal deeds of June 17th,
1859, purported to convey the whole property without refer-
ence to the said conveyances of the coal underlying the said
tracts of land. By deed dated the 6th day of February, 1902,
the heirs at law of the said Connelly, Ford, Heiskell, and
Handlan, the grantees of the coal in the deeds of June 17th,
1859, conveyed the said coal and mining privileges to the
Elm Grove Coal Co., a corporation.

On the first Monday in August, 1903, the said James Y.
Wallace filed his bill in equity in the circuit court of Ohio
county against the Elm Grove Coal Co. alleging the various
deeds of conveyance of said property and also the said deeds
conveying the underlying coal to the said Connelly and others;

alleging that the said coal interest had become forfeited to the State by reason of non-entry on the land books for purposes of taxation, that the title of the grantees to said coal had become vested in the State by reason of such forfeiture, and that up to the year 1902 no redemption of said property, nor was any release or other disposition of said property or of any part thereof, made by said State of West Virginia ; that the conveyance made by John McCoy to John Blayney in the year 1864, and by John Blayney and wife to Samuel Roney in 1870 created in the said Roney a title to said coal which was adverse to that of the said Connelly, Ford, Heiskell and Handlan, and that after the said year, 1870, no payment, by the said Roney or his successors in title, of any taxes, assessed upon said coal or which should have been assessed thereon, could inure to the benefit of said Connelly, Ford, Heiskell and Handlan as privies in title to the said Samuel Roney; and that the conveyance of said property by Roney to Jones, trustee, in 1870, and the conveyance thereof to plaintiff by said Jones, trustee, in the year 1877, were also conveyances adverse to the said Connelly and his co-vendees; and that no payment of taxes by the said Jones or by the plaintiff could inure to the benefit of the said Connelly and his co-vendees as privies in title to the said Jones, or to the plaintiff; that the plaintiff had actual, adverse, exclusive and constructive possession of said property under claim of title from 1877 to the present time and had paid the said taxes thereon from year to year for each year after the year 1877, and that those under whom the plaintiff claimed had like possession and claim and had paid taxes for more than twenty years next previous to the conveyance to plaintiff; that since the 9th of April, 1873, no person excepting the plaintiff had had actual continuous possession of the said coal property under color or claim of title for ten years and no person except plaintiff and said Jones, under whom plaintiff claimed, had paid the state taxes on said property or any part thereof for any five years since the last mentioned date; and alleging that by operation of law and in pursuance of the Constitution of the State the title to said coal so forfeited to the State and not having been redeemed, released or otherwise disposed of had been transferred to and vested in the plaintiff; alleging that the defendant at the time the said conveyance was made

to it by the heirs at law of the decedent vendees of the coal, on the 6th day of February, 1902, had full and actual, as well as constructive knowledge that the title to the said coal privileges vested in its grantors had become forfeited and had become vested in plaintiff; that the deed constitutes a cloud upon plaintiff's title to his said property, that he ought to have a clear and undisputed title thereto, that defendants took by its said deed no estate or interest whatever in any of the coal underlying plaintiff's farm; that the said deed so far as it undertakes as purported to convey any interest in said coal ought to be set aside and annulled; that plaintiff had no adequate remedy at law in the premises; that the defendant be required to answer the bill and that upon the final hearing of the cause the said deed to the defendant might be declared to be absolutely void and of no effect so far as it undertakes to convey any interest in the coal underlying plaintiff's farm; and for general relief.

Defendant filed its demurrer in writing to plaintiff's bill, in which demurrer the plaintiff joined and on the 21st day of April, 1905, the following order was entered: "The defendant, Elm Grove Coal Company, at a former term of this Court, filed its demurrer in writing to the plaintiff's bill, and the said demurrer having at said term been argued and submitted to the court, (it being admitted in the oral argument that there had been no actual possession of the underlying coal as distinguished from the constructive possession resulting from the conveyance of the land to the plaintiff and his grantors and from the occupancy of the surface by the plaintiff and his grantors; and a willingness was expressed that the matters arising should be passed upon as if the averments were modified accordingly), the court now adjudges the law upon said demurrer to be with the defendant, and the plaintiff's bill to be insufficient in law. The demurrer is sustained. And the plaintiff not desiring to amend, it is adjudged, ordered and decreed that the bill of complaint be dismissed, and that the defendant recover from the plaintiff its costs in this suit expended to be taxed by the clerk." From which decree plaintiff appealed and in his petition says: "The main question presented to this Court is, has the title of the defendant been forfeited to the state?" and Second: "The remaining question is, Has the forfeited title vested in the plaintiff?"

Counsel for plaintiff in their petition say: "In arguing the demurrer the plaintiff's counsel conceded that there had never been any actual possession of these veins of coal by any one. The averments of the bill with respect to the plaintiff's possession must be modified in accordance with this admission as shown by the decree complained of. Since that time it has been learned that this concession should not have been made, but, for the purposes of this appeal, it is to be considered as binding." We are unable to see how this concession is prejudicial to the plaintiff. Under the great weight of authority he could acquire no title to the coal underlying the farm by his actual and exclusive possession of the surface. In 1 Cyc. 994, it is said : "It is a general presumption that one who has the possession of the surface of the land has possession of the subsoil also. But when, by conveyance or reservation, a separation has been made of the ownership of the surface of the land from that of the underground minerals, the owner of the former can acquire no title to the latter by his exclusive and continued enjoyment of the surface; nor does the owner of the minerals lose his right or his possession by any length of non-usage. He must be dissiezed to lose his right, and there can be no dissiezin by an act which does not actually take the minerals out of his possession." A conveyance of the underlying coal with the privilege of its removal from under the land of the grantor "effects a severance of the right to the surface from the right to the underlying coal, and makes them distinct corporeal hereditaments. The presumption that the party having the possession of the surface has the possession of the subsoil also, does not exist when these rights are severed." *Armstrong* v. *Caldwell*, 53 Pa. St. 284. And in *Caldwell* v. *Copeland*, 37 Pa. St. 427, it is held : "Possession of the surface for more than twenty-one years does not carry with it the possession of coal below it, where the title to the mineral rights had been severed from that of the surface by deed;" and it is there further held: "When the owner of the surface seeks to establish title to a mine, by adverse possession under the statute, in opposition to his deed, he must prove possession of the mine as such, independent of the surface, or there can be no question of adverse holding to submit to the jury." 1 A. & E. E. L. 875, (2d Ed.); 2 Snyder on Mines, secs. 971–972, and authorities cited; see also *Coal*

*Co.* v. *Kelly*, 24 S.E. 1020 (Va.); *Preston* v. *White*, 50 S.E. 236 (57 W. Va.); *Peterson* v. *Hall*, 57 W. Va.; 50 S.E. 603, 5 Cur. Law 57, note 11; *Huss* v. *Jacobs*, 210 Pa. St. 145, 59 St. Rep. 991.

It is claimed by appellee that this case is governed by the case of *State* v. *Low*, 46 W. Va. 451. In that case the title of Low and others was a defeasible title, the vendees could at their option under their contract omit to pay within a given time the sum of $800—when upon such failure to pay their title was to become and be ''as absolutely null and void as though it had never been made,'' and the title would thus revert to the grantor in whose name the whole property was charged for purposes of taxation. While in case at bar Roney in 1870 took a title hostile to that of the vendees of the coal, and as we have seen under the authorities he, nor those holding under him, never could have possession of the coal under his deed without entering into the coal in the way of mining the same or reducing the coal itself to physical possession, and that in an open manner so as to give notice to the world that he was claiming it as his own and hostile and adverse to all others.

Appellant claims that by reason of non-entry of the coal on the assessor's books, the title thereto became forfeited to the State and by virtue of section 3, Art. 13 of the Constitution, and section 40 of chapter 31 of the Code, the title so forfeited passed to the appellant as a person of the second class described in said sections of the Constitution and statute.

The appellant could not take by transfer under the second class mentioned in said sections because when he purchased the land, the coal had been severed by deed, and was distinct and apart from the surface, that held by appellant, and it is immaterial whether the title to the coal conveyed in 1859 was forfeited to the State or not for non-entry or otherwise; appellant had no claim to it because he had no title conveying it, and it is only he who has good title can maintain a suit to remove a cloud from his title. He certainly did not take title to the coal when he purchased from the trustee, Jones, and he had no possession of the coal thereafter, the only thing that could ripen a mere color of title into a good title. In *Hitchcox* v. *Morrison*, 47 W. Va. 206, syl. pt. 2, it is held: ''Those only who have a clear legal and equitable title

to the land, connected with actual possession, have a right to claim the interference of a court of equity to give them peace, or dissipate a cloud on their title." *Orton* v. *Smith*, 18 How. (U.S.) 263; *U. S.* v. *Wilson*, 118 U. S. 86; *Frost* v. *Spitley*, 121 U.S. 552. And in *Mills* v. *Oil Co.*, 50 S. E. 157 (57 W. Va.) syl. pt. 4, it is held: "A bill in equity to remove a cloud over title to land cannot be sustained unless the plaintiff have both good title and actual possession. The weakness of the adversary's title will not sustain the bill." We deem it unnecessary to decide in this cause whether the title to the coal was or was not forfeited to the State for non-entry or otherwise, inasmuch as such title if forfeited did not pass to the appellant; hence do not pass upon that question.

For the reasons here stated the circuit court did not err in sustaining defendant's demurrer to plaintiff's bill and the judgment of the circuit court is affirmed.

*Affirmed.*