## DYER et al. v. UNITED FUEL GAS CO.
### Civ. A. No. 912.

United States District Court
S. D. West Virginia.
April 29, 1950.

---

Rummel, Blagg & Stone, Donald O. Blagg and A. G. Stone, Charleston, W. Va., for plaintiffs.

J. M. Harper, Spencer, W. Va., W. C. Battle, Charleston, W. Va., C. E. Goodwin, Charleston, W. Va., B. J. Pettigrew, Charleston, W. Va., for defendant.

MOORE, District Judge.

This is an action for a declaratory judgment, under Title 28 U.S.C.A. §§ 2201, 2202, instituted by plaintiffs, as citizens of Ohio against defendant as a citizen of West Virginia, praying for a decree declaring their title to the minerals in a 181¾ acre tract of land situate in Wayne County, West Virginia, to be good and valid; and seeking cancellation, as a cloud upon their title, of a "severance" deed dated August 15, 1879, executed by defendant's predecessors in title.

The tract in dispute lies within the outer boundaries of a 550 acre tract granted to one George Hinkle by the Commonwealth of Virginia on July 1, 1850; and this 550 acre tract in turn lies wholly within the outer boundaries of a 31,000 acre tract granted to one Samuel Smith by the Commonwealth of Virginia on June 29, 1797. Plaintiffs are the heirs and lessees of one James Dyer, and are the legal successors to the documentary title of George Hinkle. Defendant is the legal successor to the documentary title of Samuel Smith.

Titles of plaintiffs and defendant are derived as follows:

George Hinkle, holder of the 550 acre "junior" patent, died shortly after the Civil War, leaving as survivors his wife, five sons and two daughters. The evidence does not show where the family lived at the time of his death, but some time later the remains of George Hinkle were moved to the Hinkle Farm and buried there. In 1868 one John Neece and his family moved on the land adjoining the Hinkle tract, and the Hinkle family was living thereon at that time. In 1870 or 1871, pursuant to an oral agreement between Harvey Hinkle (a son of George Hinkle) and John Neece, Neece purchased 450 acres of the Hinkle tract, including the 181¾ acres in dispute, the Hinkles leaving the State and the Neeces taking possession immediately. At that time there were two old log houses on the land and about 50 acres had been cleared and fenced. Neece cleared an additional 30 or 40 acres and erected several buildings. There is no evidence that Neece ever received a deed from any of the Hinkles, or that he actually lived on or fenced in the 181¾ acres in dispute.

On September 12, 1872, A. A. Low, William Aspinwall and others by deed acquired ownership of the Smith "senior" patent, covering the 31,000 acre tract. In 1874 they instituted in this Court an action in ejectment against Neece and a large number of other defendants for the recovery of a tract of 379,665 acres, which included within its boundaries the disputed 181¾ acre tract. George Hinkle, whose estate at that time was the owner, according to the land books, of two other tracts of land in Wayne County within the Smith senior patent, was named as a defendant in this ejectment action, but of course was not served. John Neece was served with a copy of the declaration and notice of the suit on June 6, 1874, and on June 7, 1879, judgment in favor of plain-

tiffs was entered against Neece, along with other defendants. Writ of possession was issued under this judgment; but apparently not served, since Neece remained in possession.

A few days or weeks after the date of the judgment, J. I. Kuhn, a land agent for Low and Aspinwall, had some negotiations with Neece regarding the land of which Neece had possession. A deed dated August 15, 1879, was executed by Kuhn as attorney in fact for Low, Aspinwall and others conveying to John Neece the 450 acres of surface, and excepting and reserving all minerals. This deed was signed and acknowledged by Kuhn as such attorney in fact on September 2, 1879, and filed for record in the office of the Clerk of the County Court of Wayne County on October 14, 1879. Appended to the deed was an acknowledgment, purportedly prepared by a deputy county clerk, to the effect that John Neece had signed and acknowledged the deed. The acknowledgment was not signed, and Neece's signature does not appear anywhere on the document. The deed was not certified by the clerk as having been admitted to record until July 4, 1887.

Some time after Kuhn's negotiations with Neece, Harvey Hinkle returned, and had some negotiations with Neece, as a result of which Neece decided to pay a sum of money to Hinkle, presumably for an interest of some kind in the land. The record fails to disclose any reason why Neece, who had recently been negotiating with the agent of Aspinwall and Low for an interest in the land; should now be ready to pay money to the Hinkle heirs for possession thereof, when his right to possession under the Hinkles had only a short time before been decided adversely to him in the ejectment suit brought by Aspinwall and Low. However, Neece sent his son to borrow some money with which to pay Hinkle; but before the son returned Hinkle sold the land to one John Dyer, and, pursuant to a power of attorney from all the Hinkle heirs, executed a deed dated May 4, 1880, conveying to Dyer in fee the 450 acres then in the possession of Neece. Neece and Dyer, by oral agreement, afterwards made a division of the land, Dyer taking the portion which included the disputed 181¾ acres. A short time thereafter, James Dyer, son of John Dyer, moved on the land. One of his sons, Freeman, was born there on April 7, 1882. James Dyer, or those claiming under or through him, have been in actual possession from 1881 to the present time. The 181¾ acre tract was deeded by John Dyer to James Dyer on March 4, 1886. In 1947 James Dyer executed an oil and gas lease to Owens-Illinois Glass Company and Libbey-Owens-Ford Glass Company, plaintiffs herein with the heirs of James Dyer (he having died intestate in 1948).

Defendant is the legal successor to the documentary title of Aspinwall, Low and others to the 31,000 acre tract originally granted to Samuel Smith, and has drilled a number of gas wells upon other portions of this tract; but at no time have defendant or its predecessors drilled upon or entered upon the 181¾ acre tract, nor have plaintiffs or their predecessors ever drilled for oil or gas upon this tract.

The assessor's records for Wayne County show that plaintiffs' predecessors were assessed with the fee in the Hinkle tract from 1851 through 1905 (with the exception of the years 1862, 1863, 1864 and 1865, for which years records are not available). Commencing in 1906 and up to time of the institution of this action, plaintiffs and their predecessors were assessed with the 181¾ acres as "surface". The land books show that in Grant District of Wayne County (wherein the 181¾ acre tract is situate) in the year 1905 there were 357 tracts charged as fee, 9 tracts charged as surface and 12 tracts charged as mineral. In 1906 there were 44 tracts charged as fee, 369 tracts charged as surface and 11 tracts charged as mineral, a total of 284 changes from fee to surface having been made in that district. The records show similar changes in large numbers from fee to surface the same year in Stonewall District of Wayne County and in Harts Creek, Laurel Hill and Lincoln Districts of Lincoln County. Substantial portions of each of these districts lie within the Smith patent. No reason for these changes is given in the land books, nor was any reason supplied by the evidence.

None of the plaintiffs or their predecessors in title has ever made a deed severing title to the minerals in the 181¾ acre tract from title to the surface; and there is no evidence that any of the other owners of land which was changed from "fee" to "surface" in 1906 executed any severance deeds which might be assigned as reasons for such changes.

Up to and including the year 1883, defendant's predecessors were charged with a fee assessment of a large boundary of land in Wayne County, including the 181¾ acre tract. In 1884 this assessment was changed from "fee" to "mineral", and this continued through 1933. Apparently the assessment was made each year by combining a number of smaller tracts into a large acreage, and listing it on the land books as one total. From 1934 through 1937 the minerals in a tract of 406 acres which included the 181¾ acre tract were omitted from the assessment charged to defendant, but in 1938 the tract was again assessed and back taxes paid, and such assessment has continued to the present time.

Plaintiffs admit that the documentary title of defendant is superior to that of plaintiffs, since derived from a senior grant, whereas plaintiffs claim under a junior grant; but plaintiffs assert that through adverse possession for the statutory period, under color of title derived from the junior grant, they have acquired title to both surface and minerals.

Defendant contends that the ejectment action against Neece interrupted the possession of plaintiffs' predecessors prior to acquisition of title by adverse possession; that the severance deed from Aspinwall, Low and others to Neece severed the mineral estate prior to completion of the statutory period of possession by plaintiffs' predecessors (that the deed was in fact made prior to commencement of such possession), preventing the possession of the surface from extending to the minerals, and therefore preventing the acquisition of title thereto by adverse possession; and defendant disputes the propriety of any attack by plaintiffs upon the validity of the sev-erance deed, on the theory that such attack constitutes an attempt to prove their title through a weakness in defendant's title, and further, that even if such an attack is proper the deed is nevertheless valid and effected a severance of the mineral estate; and defendant urges that even if it should be held that plaintiffs or their predecessors acquired title to the mineral estate by adverse possession, such title was forfeited to the State by assessment of the land as "surface" only subsequent to 1906, and that after forfeiture title was acquired by defendant pursuant to Article 13, Section 3, of the West Virginia Constitution.

In answer to these contentions, plaintiffs say that the ejectment action against Neece affected neither the possession nor the title of their predecessors, who were not parties to the suit; they assert that prior to the severance deed their predecessors acquired adverse title to the minerals, since Neece as Hinkle's executory vendee was in the same relation to the Hinkles as a tenant would be, and his possession was therefore their possession; that even if their predecessors are held not to have acquired title prior to the severance deed, nevertheless the period of possession had at least commenced prior to that deed, and severance could not therefore be effected without entry and ouster; that even if that be not so, the severance deed was invalid because not accepted by Neece, and possession for ten years subsequent to the deed would therefore vest title in plaintiffs' predecessors; that they can with propriety attack the validity of the severance deed, it not being a link in defendant's chain of title, since defendant does not claim that its predecessors acquired title to the minerals thereby, but rather possessed such title prior to the execution thereof; that the assessment as "surface" commencing in 1906 did not effect a forfeiture of the mineral estate, since such change was erroneously made without the knowledge or authority of the Dyers; and further, that even if such estate was forfeited, defendant cannot qualify as a transferee under Article 13, Section 3, of the Constitution, since Class I and Class III transferees under that Section must have

been in possession of the land claimed, and Class II is limited to those claiming under a junior grant.

It is these issues that the Court is now called upon to decide.

 Title by adverse possession in West Virginia depends for its validity solely upon the statute of limitations, which cuts off the right of one claiming land under a superior title to maintain an action for possession of the land against another who is in possession under color of title or claim of right, unless the action is commenced within ten years after it accrued. Code of West Virginia, Chapter 55, Article 2, Section 1. One who holds possession of land otherwise than by a title or claim traceable to the true owner has no additional or higher rights against the true owner at the expiration of nine years and eleven months than he had when he first entered upon the land. He may be ousted by appropriate action at any time prior to expiration of the full ten years. If the true owner begins his action of ejectment even one day before the expiration of the period of limitation, then, as to the defendant in the ejectment suit and as to all issues raised and decided therein, the prior period of adverse possession, being short of the limitation period provided by the statute, is as if it had never been.

Plaintiffs seeks to avoid the effect of the ejectment suit and the resulting judgment therein adverse to Neece's claim of a possessory right by saying, first, that since Hinkle was not a party to the ejectment suit, the judgment cannot affect Hinkle or those claiming under him; and, secondly, that since Neece occupied the land in the capacity of executory vendee of Hinkle, and since Neece was not actually and physically ousted, his possession after the judgment in the ejectment suit may be tacked to his possession prior to the suit so as to form a continuous and unbroken period of ten years' adverse possession.

 Plaintiffs seem to be confusing the paper title of Hinkle with the right to possession of the land. It is not claimed in this suit that the Hinkle paper title was or is a good title. It is conceded that the Smith patent under which defendant claims is senior to that of Hinkle, and that when the possession of Hinkle began the successors in title to Smith were the true owners. The only place in this picture for the Hinkle paper title is that of color of title for occupancy of the land by Hinkle or his agents, so as to preclude an ejectment action by the true owner after ten years continuous possession thereunder. It is argued by defendant that because the statute in effect prior to 1877 did not provide for making any person defendant other than the one in actual occupancy, the judgment in the ejectment suit of Aspinwall, Low and others against Neece was binding upon Hinkle and the successors to the Hinkle title, even though Hinkle had no actual notice or knowledge of the pendency of the suit. I do not agree. The judgment in the ejectment suit was a decision adjudicating the right to possession as between Aspinwall, Low and others on the one hand, and John Neece on the other. It meant that Neece had no legal right to occupy the land, under whatever color of title he may have asserted such right. It did not affect the rights of Hinkle, or his successors in title. While it is now conceded that the Smith paper title was at all times superior to that of Hinkle, yet the latter, in the hands of a stranger to the ejectment suit, might and did still constitute color of title under which adverse possession might ripen into legal title.

This leads to consideration of the argument that Neece's possession after the ejectment suit may be tacked to his possession before the suit was started, so as to form a continuous period of ten years' adverse possession.

 The ejectment suit was started in 1874. Manifestly, the occupancy of Neece during the pendency of the ejectment suit cannot be counted; otherwise, the true owner of land, having brought an ejectment suit near the close of the ten year period of statutory limitation, would find his rights defeated by mere lapse of the time required to carry through the suit. 1 Am. Jur., Adverse Possession, section 180; 2 C.J.S., Adverse Possession, § 153. The question then is whether, the judgment hav-

ing gone against Neece, his continuing to occupy the land in defiance of the judgment, under the same color of title which he held before, could ever, either by itself or in conjunction with occupancy by others, ripen into title by adverse possession.

■ The law is settled in West Virginia that judgment for plaintiff in an ejectment suit, whether followed by writ of possession or not, operates to destroy the color of title under which defendant has theretofore occupied the land. Wade v. McDougle, 59 W.Va. 113, 52 S.E. 1026. If the defendant after judgment continues to occupy the land under claim of right, his possession, if it is to form the basis of an adverse title, must be actual; that is, it must be limited to such part of the land as he actually has under fence or cultivation, or in some other form of open, visible and physical possession. 59 W.Va. at page 126, 52 S.E. 1026, summarizing authorities. Neece's color of title prior to the ejectment suit was traceable to the 550 acre Hinkle grant, and since the 181¾ acre tract in dispute lay within that grant, color of title, and therefore possession by Neece, extended to it; but there is no evidence that Neece ever actually occupied any part of the 181¾ acre tract. His house and the land cultivated by him may have been located on an entirely different part of the 550 acres.

■ Moreover, in my opinion, Neece, after judgment in the ejectment suit, did not hold adversely to Aspinwall, Low and others. The fact that a judgment was rendered in that suit against Neece, that he remained on the land, and that within a few weeks after judgment a deed was executed by Aspinwall, Low and others conveying to him the surface of 450 acres with reservation of the minerals, strongly indicate that Neece simply tried to make the best of what was for him a bad situation. His right to hold under Hinkle had been extinguished by the judgment. Therefore, he was free to deal with Aspinwall and Low, which he did, and his holding the land thereafter was as their grantee and not Hinkle's.

For these reasons the possession of the land by John Neece, whether before, during or after the ejectment suit, did not in any way inure to the benefit of the plaintiffs in the instant suit. Their adverse title, if any, must be derived from the possession which started when James Dyer moved on the land in 1881. This, it will be noted, occurred after the so-called severance deed from Aspinwall, Low and others to John Neece was executed and filed for record in the office of the County Clerk of Wayne County, West Virginia, but before the date on which, the Clerk's certificate states, it was "duly admitted to record." It is necessary then to determine whether this deed affected a severance of the minerals from the surface, and if so, whether John Dyer, when he accepted the deed from the Hinkle heirs on May 4, 1880, pursuant to which his son, James Dyer, soon thereafter moved on the land, was chargeable with knowledge of the severance deed; and also whether such knowledge on the part of the adverse holder is required in order to defeat his adverse claim to the minerals by occupancy of the surface.

■ In my opinion, it is not incumbent upon defendant to prove affirmatively that the deed in question was delivered to and accepted by John Neece. The rule that a deed which confers benefits upon the grantee is presumed to have been accepted by him unless the contrary is shown is sufficient to establish prima facie its delivery and acceptance. See Guggenheimer v. Lockridge, 39 W.Va. 457, 19 S.E. 874; 16 Am.Jur., Deeds, section 390. If plaintiffs are to invalidate the deed they must carry the burden of doing so by affirmative evidence. This they have failed to do. It is true that the deed contained at the end a form of acknowledgment for John Neece, apparently written after the deed was filed for record, which was not executed by any person, which acknowledgment refers to John Neece as having signed the deed; and the absence of Neece's signature from the deed doubtless explains why it was held for nearly eight years in the Clerk's Office; but I do not interpret these circumstances as indicating necessarily that the deed was not delivered and accepted. As I view the matter, Neece may have accepted the deed without actually having it in his hands.

He may have relied on the grantor to file it for record, and it may have been his intention, which he never carried out, to go to the Clerk's Office and sign and acknowledge it. Nevertheless, the deed is complete without Neece's signature. It contains no covenants or obligations on his part. In the absence of any direct proof to the contrary, I am forced to conclude that the nature of the deed itself establishes the fact that it was delivered and accepted.

Was John Dyer chargeable with notice of the severance deed when he bought the land on May 4, 1881, from the Hinkle heirs? The case of Gill v. Colton, 4 Cir., 12 F.2d 531, grew out of the same circumstances as the instant case to the extent that it involved conflicting claims to the minerals in other portions of the Smith grant by the successors in title to Aspinwall, Low and others on the one hand, and adverse claimants on the other. In that case the interest of two persons named Rolfe and McCullough, who claimed adversely to Aspinwall and Low, and against whom judgment was rendered in a companion ejectment suit, was conveyed to H. A. and T. J. Gill, who sold the land to one Holton in March, 1883, a deed being executed therefor in October, 1884. Holton went into possession at the time of the contract for purchase of the land. Later, in the same month of March, 1883, Kuhn, as attorney in fact for Aspinwall, Low and others, executed a deed to the Gills similar to the deed made to John Neece and involved in the instant suit, in that the deed was a conveyance of the surface of the land, with minerals reserved to the grantors. The evidence in the case convinced the Court of Appeals that this deed was never accepted by the Gills. It was lost, and the suit was brought by successors in title of Aspinwall, Low and others to establish it as a lost instrument. It was never recorded. The Court held that (1) Holton having contracted for and taken possession of the land prior to the execution of the severance deed, (2) there having been no acceptance by the Gills, and (3) the deed never having been recorded, *and not being within the chain of title under which Holton claimed*, the mere existence of the deed was not such a severance of the minerals from the surface as would prevent Holton and those claiming under him from establishing title to the minerals by adverse possession of the surface.

■ The instant case lacks some of the features of Gill v. Colton. The deed from Aspinwall, Low and others to Neece was both executed and filed for record prior to the date of the deed from the Hinkle heirs to John Dyer and assumption of possession thereunder; and as has been said, there is no evidence which would justify the Court in holding that this deed was not delivered to and accepted by Neece. However, there is one circumstance in connection with the severance deed which is identical, namely, it was not within the chain of title under which plaintiffs claim, and consequently, as in Gill v. Colton, plaintiffs and their predecessors in title were not chargeable with notice of its provisions. The Code of West Virginia, Chapter 40, Article 1, Section 15, provides that "a purchaser shall not * * * be affected by the record of a deed or contract made by a person under whom his title is not derived." Therefore, the filing for record of the Neece deed in 1879 did not give constructive notice thereof to John Dyer, who claimed under a different and hostile title; nor is there any evidence that John Dyer or his successors had any other notice, actual or constructive, that such deed existed until long after the statutory period of adverse possession by them had elapsed.

■ I find no case in which it has been held that a severance deed of which an adverse holder has no notice or knowledge is effective to prevent the adverse holder's possession of the surface from extending to the mineral also. It makes no difference that the severance deed may have been made before possession began. It may be a perfectly valid deed as between the grantor and the grantee and those claiming under them; but as against one holding possession adversely under color of a hostile title, if the severance deed is to prevent his actual possession of the surface from extending to the minerals, notice thereof must in some way be brought home to him.

Clements v. Texas Co., Tex.Civ.App., 273 S.W. 993. As to the necessity of notice, even when the severance deed is in the same chain of title, see Miller v. Estabrook, 4 Cir., 273 F. 143; Huntington Development & Gas Co. v. Stewart, 4 Cir., 44 F.2d 119; Stowers v. Huntington Development & Gas Co., 4 Cir., 72 F.2d 969. Defendant has cited many cases, and I have found others in which it is held that a severance deed of minerals executed prior to the beginning of an adverse holding limits adverse possession of the surface of the land to surface alone; but in every such case the severance deed was within the chain of title under which the adverse possessor claimed, or else there were circumstances indicating that the adverse holder had actual knowledge of the severance. Wallace v. Elm Grove Coal Co., 58 W.Va. 449, 52 S.E. 485, 6 Ann.Cas. 140; Central Trust Co. v. Harless, 108 W.Va. 618, 152 S.E. 209; State v. Estep, 115 W.Va. 55, 175 S.E. 350; Miller v. Estabrook, supra; Huntington Development and Gas Co. v. Stewart, supra; Stowers v. Huntington Development and Gas Co., supra; Putnam Co. v. Fisher, 128 W.Va. 383, 36 S.E.2d 681; Bennett v. Neff, 130 W.Va. 121, 42 S.E.2d 793.

I conclude that since there is no evidence that plaintiffs' predecessors in title had actual notice of the severance deed to Neece, and since the recording thereof did not give them constructive notice, the Neece deed did not affect the adverse possession of the minerals by plaintiffs' predecessors.

 Plaintiffs' predecessors in title therefore had good title by adverse possession to the 181¾ acres of minerals, unless, as defendant contends, such title was forfeited by reason of non-entry on the land books for the years subsequent to 1905. Defendant could not make this defense to plaintiffs' suit unless it were in a position to claim the benefit of the forfeiture. Plaintiffs argue that the Constitution limits such beneficiaries to those who may either have had actual possession for such time as is provided in the Constitution, or are claimants under a junior grant or patent. See Constitution of West Virginia, Article XIII, Section 3. I am not impressed by this argument. I believe that any claimant, having paid the taxes on forfeited land for the requisite number of years, who has a title thereto "which" (in the words of the Constitution) "but for the title forfeited would be valid", may claim the benefit of the constitutional provision; and that the phrase, "which but for the title forfeited, would be valid", does not refer alone to persons claiming under junior grants, but may apply as well to one holding a senior grant whose title has been lost by adverse possession, as is the case here.

 So, in my opinion, defendant has the right to raise the question; but I must hold that plaintiffs' title was not forfeited. When plaintiffs' predecessors became vested with good title by adverse possession (which occurred many years prior to the year 1906), the title of all persons claiming under the Smith patent, both as to surface and mineral, was extinguished. Under the West Virginia Statute, Chapter II, Article 4, Section 9, the assessor is authorized to assess separately the surface of land and the minerals thereunder only "when any person becomes the owner of the surface, and another or others become the owner of the coal, oil, gas, ore, limestone, fireclay, or other minerals or mineral substances in and under the same." In 1905 and for some years prior thereto, plaintiff's predecessors had been the owners not only of the surface of the 181¾ acre tract, but of the minerals therein as well. No separate estate in the minerals was ever created in that chain of title. Hence, the assessor had no authority to charge the surface and minerals separately on the land books. Moreover, it is shown that a large number of tracts of land in the vicinity of the 181¾ acre tract, lying within the boundaries of the Smith patent, experienced the same peculiar treatment; that is, having been listed theretofore on the land books and assessed as "fee", they were at that time and without any explanation changed to "surface". At the same time there was no reduction in assessed valuation. These circumstances, it seems to me, are indicative of a calculated scheme on the part of some interested person to make it appear that the owners of the land were conceding that they owned

only the surface, when in fact no such concession was made or intended.

It is my opinion that the assessment of the 181¾ acres as surface, there having been no severance of title as between the surface and the minerals, and no diminution in assessed valuation, was sufficient to protect the minerals from forfeiture and that there was no such forfeiture. See State v. Guffey, 82 W.Va. 462, 95 S.E. 1048.

It follows from what has been said that plaintiffs have good title to the minerals in the land in question, based on adverse possession thereof by their predecessors in title. The deed from Aspinwall, Low and others to Neece will be cancelled and removed as a cloud upon that title.